UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERLENE DAYAN and ESTATE OF RAYMOND DAYAN,<br><br>                    Plaintiffs,<br><br>        - against -<br><br>LEONORA SUTTON a/k/a LENORA SUTTON, ESTATE OF MAYER SUTTON, ISAAC SUTTON, ALBERT SUTTON, MORRIS SUTTON, ELIAS SUTTON a/k/a ELLIOT SUTTON, MIDDLEGATE SECURITIES LTD. and ABC Co., Inc. 1-10,<br><br>                    Defendants, | Case No. 20-CV-9563 (AKH) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS ALBERT SUTTON, ELIAS SUTTON a/k/a ELLIOT SUTTON, AND MIDDLEGATE SECURITIES LTD.

**WACHTEL MISSRY LLP**
One Dag Hammarskjold Plaza
885 Second Avenue
New York, New York 10017

*Attorneys for Defendants Albert Sutton, Elias Sutton a/k/a Elliot Sutton and Middlegate Securities LTD.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**PRELIMINARY STATEMENT** ................................................................................................ 1

**FACTUAL BACKGROUND** .................................................................................................... 2

**LEGAL ARGUMENT** ............................................................................................................. 5

   **I. THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED** ......................... 6

     (a)  Plaintiff's Cause of Action for Breach of Contract Should be Dismissed for Failing to Properly Allege the Existence of a Valid Contract ........................................................... 6

     (b)  The Breach of Contract Claim Should be Dismissed as Outside the Statute of Limitations .................................................................................................................................. 8

   **II. THE BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED** .......... 10

     (a)  The Breach of Fiduciary Duty Claim Should be Dismissed as Duplicative of the Breach of Contract Claim ...................................................................................................... 10

     (b)  The Breach of Fiduciary Duty Claim Should be Dismissed as Outside the Statute of Limitations ............................................................................................................... 11

   **III. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED** ....................... 12

     (a)  The Unjust Enrichment Claim Should be Dismissed for Failure to Demonstrate that Defendants Benefited from the Allegedly Transferred Funds ....................................... 12

     (b)  The Unjust Enrichment Claim Should be Dismissed as Duplicative of the Breach of Contract Claim ................................................................................................................... 13

     (c)  The Unjust Enrichment Claim Should be Dismissed as Outside the Applicable Statute of Limitations ................................................................................................................... 14

   **IV. THE MONEY HAD AND RECEIVED CLAIM SHOULD BE DISMISSED** ........... 14

     (a)  The Money Had and Received Claim Should be Dismissed for Failure to Allege that Defendants Received Money Belonging to the Plaintiffs ............................................... 14

     (b)  The Money Had and Received Claim Fails as Outside the Statute of Limitations ........ 15

   **V. THE CONVERSION CLAIM SHOULD BE DISMISSED** ........................................... 16

000530-033/00280702-2

(a)  The Conversion Claim Should be Dismissed for Failure to Demonstrate that Defendants Took Possession of Plaintiffs' Money .......................................................................... 16

(b)  The Conversion Claim Should be Dismissed as Duplicative of the Breach of Contract Claim ................................................................................................................................. 16

(c)  The Conversion Claim Should be Dismissed as Outside the Applicable Statute of Limitations ........................................................................................................................ 17

**VI. THE ACCOUNTING CLAIM SHOULD BE DISMISSED** ....................................... 18

(a)  The Cause of Action for Accounting Should be Dismissed Because the Alleged Relationship Between Plaintiffs and Defendants is Governed by a Contract ............... 18

**CONCLUSION** ............................................................................................................. 19

# TABLE OF AUTHORITIES

**CASES**                                                                                              **PAGE**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*,
   731 F.2d  (2d Cir. 1984) .......................................................................................... 15

*Ashcroft v. Iqbal*,
   556 U.S. (2009) ........................................................................................................ 6

*Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*,
   159 F. Supp. 3d (E.D.N.Y. 2016) ........................................................................... 18

*Baiul v. NBC Sports*,
   708 F. App'x  (2d Cir. 2017). .................................................................................. 14

*Baiul v. NBC Sports*,
   No. 15-CV-9920 (KBF), 2016 WL 1587250 (S.D.N.Y. Apr. 19, 2016) .................. 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. (2007) ........................................................................................................ 6

*Berman v. Sugo LLC*,
   580 F. Supp. 2d (S.D.N.Y. 2008)........................................................................ 6, 16

*Bytemark, Inc. v. Xerox Corp.*,
   342 F. Supp. 3d (S.D.N.Y. 2018).......................................................................... 13

*Corsello v. Verizon New York, Inc.*,
   18 N.Y.3d (2012) ................................................................................................... 13

*Dayan Enterprises, Corp. v. Nautica Apparel, Inc.*,
   2003 WL 22832706 (S.D.N.Y. Nov. 26, 2003) ..................................................... 18

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d (S.D.N.Y. 2011).......................................................... 6, 10, 17, 18

*Ely-Cruikshank Co. v. Bank of Montreal*,
   81 N.Y.2d (1993) ..................................................................................................... 8

*E-Glob. Alls., LLC v. Anderson*,
   No. 10 CIV. 2844 KMK PED, 2011 WL 8879268 (S.D.N.Y. May 11, 2011) ........ 10

*E-Glob. Alls., LLC v. Anderson*,
   No. 10-CV-2844 KMK PED, 2012 WL 3656042 (S.D.N.Y. Aug. 25, 2012) ......... 10

000530-033/00280702-2

*Glynwill Invs., N.V. v. Prudential Sec., Inc.*,
No. 92 CIV. 9267 (CSH), 1995 WL 362500 (S.D.N.Y. June 16, 1995) ........................ 6, 8, 11

*Goldfine v. Sichenzia*,
73 A.D.3d 854, 854 (2d Dep't 2010) ............................................................... 15, 16

*Harlem Cap. Ctr., LLC v. Rosen & Gordon, LLC*,
145 A.D.3d  (1st Dep't 2016).......................................................................... 17

*Howell v. Am. Airlines, Inc.*,
2006 WL 3681144, (E.D.N.Y. Dec. 11, 2006) ...................................................... 7

*James v. Countrywide Fin. Corp.*,
849 F. Supp. 2d  (E.D.N.Y. 2012)................................................................... 7, 8

*Kaye v. Grossman*,
202 F.3d 611, 616 (2d Cir. 2000)..................................................................... 12

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d  (2d Cir. 2007).................................................................................. 6

*Metro. Bank & Tr. Co. v. Lopez*,
189 A.D.3d (1st Dep't 2020)......................................................................... 16, 18

*Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.*,
14 A.D.3d  (2d Dep't 2005) ............................................................................ 12

*Onanuga v. Pfizer, Inc.*,
369 F. Supp. 2d  (S.D.N.Y. 2005)................................................................. 14, 15

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*,
88 A.D.2d 883, 884, 452 N.Y.S.2d (1982) ......................................................... 16

*Salzmann v. Prudential Sec. Inc.*,
No. 91 CIV. 4253 (KTD), 1994 WL 191855, (S.D.N.Y. May 16, 1994) .............................. 11

*Seneca Ins. Co. v. Wilcock*,
No. 01 CIV. 7620 (WHP), 2002 WL 1067828, (S.D.N.Y. May 28, 2002) ........................... 17

*Spinelli v. Nat'l Football League*,
96 F. Supp. 3d (S.D.N.Y. 2015).......................................................................... 6

## STATUTES

CPLR §214(4)......................................................................................................... 11

CPLR §213........................................................................................................................... 8, 9, 15

F.R.C.P. §12(b)(6) ...................................................................................................... 1, 5, 6

Defendants Albert Sutton ("Albert"), Elias Sutton a/k/a Elliot Sutton ("Elliot") and Middlegate Securities LTD ("Middlegate") (each a "Defendant", and collectively, the "Middlegate Defendants"), respectfully submit this memorandum of law in support of their motion for an order pursuant to FRCP 12(b)(6) dismissing the First Amended Complaint (the "Am. Compl." or "Amended Complaint") of plaintiffs Merlene Dayan and Estate of Raymond Dayan (collectively, the "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs bring this 77-paragraph lawsuit alleging six causes of action, including breach of contract, breach of fiduciary duty, unjust enrichment, conversion, money had and received, and a claim for an accounting, stemming out of an ethereal agreement that any number of unidentified Defendants allegedly entered into with the Plaintiffs to manage their money in 2006. Despite allegedly contracting with "Defendants", the Plaintiffs transferred their money into a third-party account at an international wealth management firm known as Atlas Capital SA ("Atlas"), over which no Defendant is alleged to have authority.  It is unclear how, if at all, the Defendants managed and invested the Plaintiffs' funds which were held in Atlas accounts.  It is further unclear what obligations each defendant had pursuant to this alleged contract as the Amended Complaint does not include any references to terms of the alleged agreement.

The causes of action appear to stem from allegations that the Plaintiffs' money was not invested conservatively, but was instead transferred out of these third-party Atlas accounts to various other unknown accounts with unknown recipients at the direction of unknown entities or individuals. It is unclear what actions, if any, by the Defendants were the impetus of these transfers, how the Defendants benefitted, or how the Defendants are liable for any losses arising from these transfers to unknown recipients from a third-party financial institution, the last of

which occurred almost 8 years ago. It is further unclear why the Plaintiffs apparently did not request any reports with respect to the investments of their money, which occurred over a decade's worth of time. Ultimately, beyond conclusory allegations or allegations based upon information and belief concerning the members of the Sutton family and Defendant entities which Plaintiffs allege are affiliated with the Sutton family, there is no assertion about any connection with the Middlegate Defendants and any wrongdoings implied or otherwise alleged in the Amended Complaint.

The Amended Complaint fails to allege sufficient information to support any causes of action. It is unclear who the Plaintiffs allege they contracted with or under what terms the alleged contract was formed. The allegations of such contract are insufficiently pleaded to support any finding of an actual, valid contract and, as such, the breach of contract claim is subject to dismissal. The remaining claims are duplicative, outside the statute of limitations, or unsupportable by the allegations in the Amended Complaint. The Middlegate Defendants' motion to dismiss should be granted.

## FACTUAL BACKGROUND

Plaintiffs assert that in approximately 2006, when Raymond was 80 years old and Merlene was 71 years old, unidentified members of the Defendants agreed to manage approximately $1,695,908 funds co-owned by Plaintiffs in a conservative manner, the primary objective being capital preservation. (Am. Compl. ¶ 26).[1] It was agreed that any investments made by Defendants of Plaintiffs' funds would be liquid or would be able to be liquidated within a reasonable time. (*Id*.). In return for the Defendants' management of Plaintiffs' funds as set forth above, the parties

---

[1] A copy of the Amended Complaint is annexed as Exhibit A to the accompanying Declaration of Jason L. Libou, Esq. dated April 29, 2021.

agreed that Defendants were entitled to charge a reasonable fee. (*Id*.). Plaintiffs fail to allege any specific terms of this alleged agreement, including the most basic of which, being whether the alleged agreement was oral or written.

Plaintiffs believe that in approximately August, 2006, they deposited unspecified assets and securities such as stocks and bonds worth $1,508,523 owned by the Plaintiffs into three separate accounts at third-party Atlas. (*Id*.). On or about August 10, 2006, Plaintiffs deposited an additional $180,000 into one of the three Atlas accounts. (*Id*.). On or about November 1, 2006, Plaintiffs deposited an additional $187,285 into the same Atlas account. (*Id*.). Contrary to the above allegations, Plaintiffs claim that Defendants, not Atlas, received a total amount of $1,695,908 of assets owned by Plaintiffs to manage. (*Id*.) None of the funds are alleged to have been paid to or deposited with Middlegate, Albert, or Elliot, and the Plaintiffs do not allege that any of the Middlegate Defendants, or Defendants in general, had authority or control over Atlas. (*Id*.)

During the period 2006 – 2012, Plaintiffs requested and received from Defendants funds totaling $605,105 to pay for their living expenses. (*Id*., ¶ 27). In July 2016, Plaintiffs' son, Morris Dayan ("Morris D."), requested the liquidation of any investments made with the Plaintiffs' funds and the repayment of all Plaintiffs' funds managed by the Defendants. (*Id*., ¶ 28). There is no indication as to whom this request was made or whether the request was oral or in writing. (*Id*.). The request for withdrawal of Plaintiffs' funds was made due to: (1) Raymond's rapidly deteriorating health and his increasing health expenses; and (2) Merlene's need to plan her independence given the looming passing of her ailing husband. (*Id*.). In response to Morris D.'s request, Plaintiffs received four checks: (1) $100,000 on August 29, 2016; (2) $50,000 on March 29, 2017; (3) $50,000 on August 2, 2017; and (4) $120,000 on September 22, 2017.

(*Id.*, ¶ 29).  Each check was drawn on a bank account in the name of "Lenora Sutton" a/k/a Defendant Leonora Sutton.  (*Id.*).

In response to Morris D.'s text request in December, 2017 for the status of the repayments of Plaintiffs' funds, Defendant Morris Sutton ("Morris S.") responded by text in February, 2018 that no additional funds were available for repayment.  (*Id.*, ¶ 32).  At no time did Morris S. explain what had happened to the remainder of the Plaintiffs' funds allegedly managed by Defendants.  (*Id.*).

Unidentified Defendants supposedly refused to return any more money to the Plaintiffs and refused supposedly to inform Plaintiffs what happened to the remainder of Plaintiffs' funds managed by Defendants, despite having informed Plaintiffs that no additional funds remained.  (*Id.*, ¶ 33).  Unidentified Defendants refused to communicate or meet with Plaintiffs or their representatives despite multiple requests for information to an unidentified Defendant by Plaintiffs.  (*Id.*, ¶ 33).  Throughout the time that Defendants were allegedly investing Plaintiffs' money, Defendants never provided any account statements, trade confirmations, or any specific information concerning the investments made with Plaintiffs' money.  (*Id.*).

Because Defendants never provided account statements, Plaintiffs never had knowledge as to the whereabouts or uses of Plaintiffs' funds.  (*Id.*).  However, Plaintiffs' claim of lack of knowledge is belied by their allegation that they deposited moneys directly into one of three accounts at Atlas.  (*Id.*, ¶ 26).

Plaintiffs hired investigators to ascertain information regarding the money that was supposedly entrusted to the Defendants.  (*Id.*, ¶ 33).  Despite depositing money directly into Atlas accounts in 2006, Plaintiffs allege they only learned of the existence of the Atlas accounts after the investigators located such information in 2019.  (*Id.*).  A review of account

statements provided to Plaintiffs by Atlas in approximately March, 2019 revealed that one account was closed in 2013, another was closed in 2014 and prior to closing, numerous transfers were made from the Atlas accounts to unknown recipients, and Defendants retained 75 shares in Thema International Fund. (*Id.*, ¶ 34). Further, the statements revealed the following charges by Atlas: (i) margin interest of $2,757.97 from 2008 to 2010; (ii) $116,355.47 in management, custodian and administration fees from 2006 to 2012; and (iii) $23,327.39 in trading commissions from 2006 to 2014. (*Id.*).

Additionally, the statements revealed that from 2006 to 2013, Defendants invested Plaintiffs' money in European or Asian stocks, bonds, mutual funds and commercial paper and from 2006 to 2014, charged Plaintiffs $18,047.40 in trading commissions. (*Id.*). These investments and activities were allegedly in breach of the agreement that Plaintiffs' funds would be managed professionally and conservatively and allegedly reflect Defendants conversion of Plaintiffs' funds. (*Id.*, ¶ 35).

Defendants declared that repayment of Plaintiffs' funds ceased as of February 23, 2018, because, as stated by Morris S. via text message that same date: "I'm literally borrowing money from my friends to pay my bills until my apt (sic) is sold." (*Id.*, ¶ 37). Upon information and belief, Morris S. actually did sell his apartment to which he referred in his February 23, 2018 text for $3,395,000 on May 23, 2019. Plaintiffs never received any money from the proceeds of Morris S.'s apartment sale. (*Id.*)

## LEGAL ARGUMENT

A party may move for dismissal of a complaint on the grounds that the complaint fails to state a cause of action upon which relief can be granted. *See* F.R.C.P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).   The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. 678 (*internal quotation marks omitted).*

"Federal courts sitting in diversity apply state substantive law." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 179 (S.D.N.Y. 2011).   When considering whether claims asserted are within the statute of limitations, "a federal court sitting in diversity applies the statute of limitations supplied by the forum state." *Glynwill Invs., N.V. v. Prudential Sec., Inc.*, No. 92 CIV. 9267 (CSH), 1995 WL 362500, at *3 (S.D.N.Y. June 16, 1995).

## I.   THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

### (a)   Plaintiff's Cause of Action for Breach of Contract Should be Dismissed for Failing to Properly Allege the Existence of a Valid Contract

"Under New York law, the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).   "Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Id.* (dismissing breach of contract claim for failing to allege creation of contract where pleadings "[did] not set forth a single fact relating to the formation of the contract, the date it took place, the contract's major terms, the parties to the contract, [] assent to its terms… [or whether] the contract at issue was oral and that the parties intended to be bound by an oral agreement.") (alterations to original).

Rather, "New York law and the *Twombly–Iqbal* standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant

has breached." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015).   "In order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based." *Howell v. Am. Airlines, Inc.*, 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006) (internal quotation marks omitted). "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim." *Id.* (citations omitted). "However, the complaint must at least set forth the terms of the agreement upon which liability is predicated by express reference." *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012).

Plaintiffs' Amended Complaint merely alleges that "in approximately 2006, the Defendants agreed to manage approximately $1,695,908" of Plaintiffs' money in a conservative manner with the primary objective of capital preservation, and that any investments made by Defendants of Plaintiffs' funds would be liquid or able to be liquidated within a reasonable time. (Am. Compl. ¶26). Allegedly, over $1,500,000 of Plaintiffs' funds were transferred into accounts at <u>Atlas</u>[2], <u>a third-party company</u>, between August 2006 and November 2006. (Am. Compl. ¶26). Plaintiffs did not deposit additional funds in Atlas accounts or any other accounts. (Am. Compl., *generally*.)

Aside from these vague allegations of the purpose of the alleged contract, there are no allegations of any specific provisions or terms in the 77-paragraph Amended Complaint beyond a conclusory statement that the parties had an indistinct agreement with the goal being capital preservation.[3]   Throughout the entire Amended Complaint, the Plaintiffs fail to allege:

1. Whether the alleged contract was oral or written;
2. Which Defendant(s) the contract was allegedly entered into with;

---

[2] Atlas is not a named defendant nor do Plaintiffs allege why the funds were sent to Atlas or how the Defendants allegedly managed the funds through this third-party entity when they did not exercise control over it.

[3] Without knowing the terms of the agreement, it is impossible for the Middlegate Defendants to assess whether such a contract would be subject to the Statute of Frauds.

3. What obligations, if any, each Defendant had with respect to the alleged agreement;
4. The terms of the alleged contract, including provisions for its cancellation;
5. The scope of the contract;
6. The compensation fee to which Plaintiffs allege that all Defendants were broadly entitled to;
7. Whether such authority for management of the funds was discretionary or not;
8. Who was responsible for payment of expenses, such as taxes or fees; or
9. Any type of requirement for notices of the performance of the funds.

No breach of contract claim can exist where no terms under which to assess a party's performance, as it would be impossible to tell whether such performance or lack thereof breached the terms where no terms exist. *Cf. James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (dismissing breach of contract claim where plaintiff did not identify contract at issue and did not specify terms of the agreement that defendant purportedly breached beyond vague assertions that contract "set forth [] commissions and other elements of compensation to be paid to Plaintiff") (alterations to original).  Because Plaintiffs fail to meet the first element of a breach of contract claim to prove the existence of a contract, the breach of contract claim must be dismissed.

     (b) <u>The Breach of Contract Claim Should be Dismissed as Outside the Statute of Limitations</u>

To the extent a contract existed, the breach of contract claims for all breaches occurring before November 13, 2014 should be dismissed as outside the applicable six-year statute of limitations. *See* CPLR 213(2). The statute of limitations on a breach of contract claim "accrues at the time of the breach… [even if] no damage occurs until later." *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) (*citing* CPLR 213) (alterations to original).  The injured party need not have been aware of the breach for the statute of limitations to begin running. *Id.*  Where multiple breaches are alleged, "a separate cause of action arises out of each transaction." *Glynwill Invs., N.V. v. Prudential Sec.*, Inc., No. 92 CIV. 9267 (CSH), 1995 WL 362500, at *3 (S.D.N.Y. June

16, 1995) (affirming that the moving defendant's analysis of the statute of limitations in circumstances with multiple transactions).

According to Plaintiffs, a breach occurred by not investing their funds conservatively, meaning the breach would have taken place when the funds were invested in any other way, which allegedly occurred between 2006 and 2013 when funds deposited by Plaintiffs into the Atlas accounts at the direction of an unknown person or entity were invested in European or Asian stocks, bonds, mutual funds and commercial paper. (Am. Compl. ¶31).  Given that a breach of contract claim accrues at the time of the breach, then under New York's six-year statute of limitations for breach of contract claims, the statute of limitations on the latest possible claim arising from such transactions would have expired in 2019, which was approximately 2 years before this lawsuit was filed. *See* CPLR 213(2).

To the extent the Plaintiffs allege that a breach occurred when funds were illegally transferred on July 10, 2009 to an unknown recipient, the statute of limitations expired on July 10, 2015. (Am. Compl. ¶34).  The same conclusion holds with respect to the final date of alleged illegal transfer date of February 22, 2013, which would have expired on February 22, 2019. (Am. Compl. ¶34).  As such, Plaintiffs' claims for breach of contract occurring before November 13, 2014, which includes all alleged unauthorized transactions (aside from the alleged transfer of proceeds from a sale of Thema International Fund shares in 2017), must be dismissed as outside the statute of limitations.[4]

---

[4] To the extent the Court does not dismiss the breach of contract claim in its entirety but instead chooses to preserve claims related to the sale of shares in Thema International Fund in 2017, then Middlegate Defendants respectfully request that this Court dismiss this proceeding failing to meet the requirement for amount in controversy to justify exercising subject matter jurisdiction.

## II.   THE BREACH OF FIDUCIARY DUTY CLAIM SHOULD BE DISMISSED

### (a)   The Breach of Fiduciary Duty Claim Should be Dismissed as Duplicative of the Breach of Contract Claim

Even in circumstances where a fiduciary relationship exists, a "cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *E-Glob. Alls., LLC v. Anderson*, No. 10 CIV. 2844 KMK PED, 2011 WL 8879268, at *9 (S.D.N.Y. May 11, 2011), *report and recommendation adopted*, No. 10-CV-2844 KMK PED, 2012 WL 3656042 (S.D.N.Y. Aug. 25, 2012).  In alleging a breach of fiduciary duty, "a plaintiff must set forth allegations that, apart from the terms of the contract, the parties created a relationship of higher trust than would arise from their contracts alone so as to permit a cause of action for breach of a fiduciary duty independent of the contractual duties." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011) (internal quotations and citations omitted).

Although Plaintiffs' breach of fiduciary duty claims are styled as separate legal violations, they are identical in substance to their breach of contract claims. Specifically, Plaintiffs allege that:

| Breach of Contract Claims | Breach of Fiduciary Duty Claims |
| --- | --- |
| • Defendants agreed "to manage and safekeep Plaintiffs' funds for benefit of Plaintiffs." (Am. Compl. ¶40).<br><br>• Defendants breached the agreement by:<br><br>(1) using the Plaintiffs' funds for their own benefit;<br>(2) failing to manage Plaintiffs' funds in the manner agreed upon; and<br>(3) by failing to exercise oversight over accounts. (Am. Compl. ¶41). | • Defendants were financial advisors of [plaintiffs] (originally stated as defendants) … and Plaintiffs entrusted management of their assets to defendants. (Am. Compl. ¶¶44-45).<br><br>• Defendants:<br><br>(1) caused the Plaintiffs' funds to be transferred to unknown parties or parties controlled by, owned by or reporting to the Suttons or Middlegate. (Am. Compl. ¶47). |

|  | (2) Breached duty by using funds to advance their own interests. (Am. Compl. ¶48).<br>(3) Breached duty by failing to provide Plaintiffs with complete information. (Am. Compl. ¶49). |
| --- | --- |

Additionally, Plaintiffs' claims here for breach of fiduciary duty lack the substance and specificity necessary to raise the relationship, as alleged, to a higher standard than that which existed as a result of the contract between the parties. As a result, Plaintiffs' claims for breach of fiduciary duty should be dismissed as duplicative of their claim for breach of contract.

    (b) <u>The Breach of Fiduciary Duty Claim Should be Dismissed as Outside the Statute of Limitations</u>

Where a plaintiff's "breach of fiduciary duty claim seeks only monetary relief, [then] it is governed by a three-year statute of limitations." *Glynwill Invs., N.V. v. Prudential Sec., Inc.*, No. 92 CIV. 9267 (CSH), 1995 WL 362500, at *3 (S.D.N.Y. June 16, 1995) (alterations to original) (citing CPLR §214(4)).  "[A] cause of action for a breach of fiduciary duty under New York law accrues upon the occurrence of the alleged wrongful act." *Salzmann v. Prudential Sec. Inc.*, No. 91 CIV. 4253 (KTD), 1994 WL 191855, at *7 (S.D.N.Y. May 16, 1994) (alterations to original). In the case of allegedly multiple breaches, the statute of limitations begins "accru[ing] at the time each wrongful transaction occurred." *See Glynwill Invs.*, 1995 WL 362500, at *3 (alterations to original).

Plaintiffs here seek only monetary damages in the Amended Complaint, making the statute of limitations 3 years from the date of accrual of a claim for breach of fiduciary duty.  As outlined above, all of the transactions which form the basis of this litigation (*sans* the 2017 sale of shares in Thema International Fund) are outside the applicable statute of limitations for breach of

fiduciary duty. At this time, it is impossible to assess whether the alleged sale of shares of Thema International Fund is within the statute of limitations for this action as Plaintiffs have failed to allege a specific date of sale; however, it is probable that the statute of limitations for breach of fiduciary duty has run on that claim as well, because the sale occurred in 2017, and this lawsuit was initiated on November 13, 2020.  As such, the Plaintiffs' claims for breach of fiduciary duty should be dismissed.

### III.        THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED

In pleading a claim for unjust enrichment, "a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).

(a) The Unjust Enrichment Claim Should be Dismissed for Failure to Demonstrate that Defendants Benefited from the Allegedly Transferred Funds

An "allegation that the [defendants] received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment." *Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.*, 14 A.D.3d 678, 680 (2d Dep't 2005) (alterations to original).

Here, Plaintiffs broadly allege that they transferred funds to Atlas, and that these Atlas-controlled funds were transferred to accounts with "unknown recipients"; however, Plaintiffs fail to allege at whose direction these transfers were made, and fail to connect any of the allegedly unauthorized transfers to conduct of the Middlegate Defendants. They further fail to allege any actual benefit to the Middlegate Defendants, as the recipients of these funds are "unknown", and, therefore, not alleged to be the Middlegate Defendants.  (Am. Compl. ¶34.)

Courts have similarly found that where a plaintiff fails to show that a defendant benefitted from a transfer of funds, then there can be no unjust enrichment. *See Kaye v. Grossman*, 202 F.3d

611, 616 (2d Cir. 2000) (reversing a jury verdict against the defendant where there was no demonstrated connection between the defendant's "benefit" and the funds at issue). Here, Plaintiffs singular, broad allegation that "Defendants have looted the money held in accounts at <u>Atlas</u> under Defendants' custody and control and have converted the funds for their sole use and benefit", (Am. Compl. 35) (emphasis added), is insufficient to support a claim for unjust enrichment.

Based upon the allegations of the Amended Complaint, it is unclear how Plaintiffs could support a contention that the Middlegate Defendants obtained the Plaintiffs' funds out of an account controlled by a third party over whom they did not exercise or assert control; over which they did not direct the transfer of funds; and of which they were not the recipients of any such transferred funds. As demonstrated above, there cannot be a claim for unjust enrichment where Plaintiffs have failed to show any connection between the Middlegate Defendants and the allegedly "looted" funds because without such connection there can be no benefit as required for an unjust enrichment claim.

    (b) <u>The Unjust Enrichment Claim Should be Dismissed as Duplicative of the Breach of Contract Claim</u>

As with a claim for breach of fiduciary duty, "an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018) (*citing Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012)). Instead, "[i]t is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello*, 18 N.Y.3d at 790 (alterations to original).

Here, Plaintiffs utilize the same language for their breach of contract and unjust enrichment claims to allege that:

1. Defendants caused Plaintiffs' funds to be transferred to unknown parties or parties controlled by, owned by or reporting to the Suttons or Middlegate. (Am. Compl. ¶ 54 (Unjust Enrichment), *compare with* ¶ 47 (Breach of Contract));

2. Defendants used the funds to advance their own interests. (Am. Compl. ¶ 55 (Unjust Enrichment), *compare with* ¶ 41 (Breach of Contract)).

Plaintiffs merely duplicate their breach of contract claim in bringing an unjust enrichment claim which should be dismissed as a result.

(c) The Unjust Enrichment Claim Should be Dismissed as Outside the Applicable Statute of Limitations

Under New York law, a six-year statute of limitations applies to claims for unjust enrichment. *Baiul v. NBC Sports*, No. 15-CV-9920 (KBF), 2016 WL 1587250, at *10 (S.D.N.Y. Apr. 19, 2016), *aff'd sub nom. Baiul v. NBC Sports*, 708 F. App'x 710 (2d Cir. 2017). A cause of action for unjust enrichment accrues upon the occurrence of the wrongful act giving rise to a duty of restitution. *See Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 500 (S.D.N.Y. 2005).

As discussed *ad naseum* with respect to other claims governed by six year statutes of limitation, the statute of limitations here has expired with respect to Plaintiffs' allegations stemming from the alleged transfers, which occurred between 2009 and 2013.  Accordingly, any claims which occurred over six year perior prior to the filing of Plaintiffs' initial action must be dismissed, leaving, at most, Plaintiffs' allegation pertaining to Thema International Fund shares sold in 2017, of which Defendants allegedly retained the balance from the sale.

IV.     **THE MONEY HAD AND RECEIVED CLAIM SHOULD BE DISMISSED**

(a) The Money Had and Received Claim Should be Dismissed for Failure to Allege that Defendants Received Money Belonging to the Plaintiffs

"The essential elements in a claim for money had and received under New York law are that (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be

permitted to keep the money." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n,* 731 F.2d 112, 125 (2d Cir. 1984).  Under New York law, a claim for money had and received cannot stand where the plaintiff fails to allege that a defendant received money belonging to the plaintiff. *See Goldfine v. Sichenzia*, 73 A.D.3d 854, 854 (2d Dep't 2010).

Here, Plaintiffs allege that money in accounts at <u>Atlas</u> was transferred to *unknown recipients* between the years of 2009 and 2013. (Am. Compl. ¶34).  Plaintiffs do not allege who authorized or directed such transfers. Plaintiffs do not allege that these funds went to the Middlegate Defendants beyond conclusory statements that all Defendants used Plaintiffs' funds for themselves. Such wrongdoing cannot be imputed to the Middlegate Defendants when the funds were in control of Atlas, a third-party entity, and transferred at the direction of an unknown party to the benefit of another unknown party. As such, Plaintiffs' Amended Complaint fails to demonstrate that the Middlegate Defendants benefitted from the receipt of Plaintiffs' money as a result of these transfers between 2009 and 2013.  Therefore, any claims for money had and received arising out of allegations related to transfers prior to November 13, 2014 should be dismissed.

(b) <u>The Money Had and Received Claim Fails as Outside the Statute of Limitations</u>

The statute of limitations for claims for money had and received is six-years from the date that the initial payment is made. *Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 500 (S.D.N.Y. 2005) *citing* CPLR §213.

Here, the majority of transfers which occurred were between 2009 and 2013 and, as such, expired in 2019, approximately one year prior to the filing of Plaintiffs' initial complaint. Therefore, all claims for money had and received arising out of allegations related to transfers prior to November 13, 2014 should be dismissed.

## V.        THE CONVERSION CLAIM SHOULD BE DISMISSED

"[C]onversion requires a showing of plaintiff[s'] ownership or legal right to possession of specific, identifiable property at the time of the alleged conversion and a showing that the defendant wrongfully took possession of the property thereby depriving the plaintiff of its right to possession." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 206 (S.D.N.Y. 2008) (alterations to original).

(a) The Conversion Claim Should be Dismissed for Failure to Demonstrate that Defendants Took Possession of Plaintiffs' Money

As was the case with the money had and received cause of action, a conversion claim cannot stand where the plaintiff fails to allege that a defendant received money belonging to the plaintiff. *See Metro. Bank & Tr. Co. v. Lopez*, 189 A.D.3d 443 (1st Dep't 2020) (dismissing conversion claim where plaintiff "failed to identify a specific fund of money held by [defendant], other than to allege she received unspecified embezzled funds from [co-defendant].") (alterations to original); *see also Goldfine v. Sichenzia*, 73 A.D.3d 854, 854 (2d Dep't 2010).

As previously addressed, the Amended Complaint here fails to demonstrate that the Middlegate Defendants "took possession" of the Plaintiffs' funds, which were allegedly transferred between 2009 and 2013, as required to support a claim for conversion. Instead, Plaintiffs alleged that Atlas permitted transfers to unknown recipients, which were arranged by unknown parties. At no point does the Amended Complaint connect any of these funds to possession by the Middlegate Defendants.

(b) The Conversion Claim Should be Dismissed as Duplicative of the Breach of Contract Claim

It is recognized law in New York that "an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract." *Peters Griffin*

*Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884, 452 N.Y.S.2d 599 (1982) (citations omitted). Instead, "[a] conversion claim may only succeed [] if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (alterations to original).

Here, as previously demonstrated with respect to the Plaintiffs' prior claims, the conversion claim is merely duplicative of the breach of contract claim. In support of their conversion claim, Plaintiffs allege that: "Defendants took possession of the accounts and accounts' funds for their own use and enjoyment." (Am. Compl. ¶68).  By comparison, with respect to the breach of contract claims, Plaintiffs allege that "Defendants breach[ed] the agreement by [] using plaintiffs' funds for their own benefit instead of plaintiffs' benefit." (Am. Compl. ¶41). These allegations are thus duplicative and as such, the conversion claim should be dismissed.

### (c) The Conversion Claim Should be Dismissed as Outside the Applicable Statute of Limitations

Even if the conversion claim were not dismissed because of its duplicative nature, it would be subject to dismissal as being outside the applicable statute of limitations, which is three years from the date that the alleged conversion or taking occurred. *See* NY CPLR 214; *see also Harlem Cap. Ctr., LLC v. Rosen & Gordon, LLC*, 145 A.D.3d 579, 580 (1st Dep't 2016). Conversion accrues "at the moment of conversion regardless of when the conversion is discovered.". *Seneca Ins. Co. v. Wilcock*, No. 01 CIV. 7620 (WHP), 2002 WL 1067828, at *6 (S.D.N.Y. May 28, 2002).

Here, the last transfer of funds from <u>Atlas</u> accounts allegedly occurred on February 22, 2013 and, as such, the statute of limitations has passed. (Am. Compl. ¶ 34).  As indicated in Point II(B) *supra*, it is thus impossible to address whether the statute of limitations applies to the allegation that Defendants kept the funds from a sale of Thema International Fund shares, which

occurred sometime in 2017 as there is no indication of the date of that sale; however, it is probable that this claim expired prior to the filing of the November 13, 2020 Complaint.

## VI.  THE ACCOUNTING CLAIM SHOULD BE DISMISSED

(a) The Cause of Action for Accounting Should be Dismissed Because the Alleged Relationship Between Plaintiffs and Defendants is Governed by a Contract

Under New York law, "the elements [for an equitable accounting] include a fiduciary or confidential relationship, money entrusted to the defendant imposing the burden of an accounting, the absence of a legal remedy, and in some cases a demand and refusal." *Metro. Bank & Tr. Co. v. Lopez*, 189 A.D.3d 443 (1st Dep't 2020) (alterations to original); *see also Dayan Enterprises, Corp. v. Nautica Apparel, Inc.*, 2003 WL 22832706, at *1 (S.D.N.Y. Nov. 26, 2003). "New York courts have repeatedly dismissed accounting claims where the parties' relationship arises from a contract." *See e.g. Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 339 (E.D.N.Y. 2016). The Courts have found that "an equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter." *See e.g. Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc*., 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011). This is because "a plaintiff would be able to obtain the information and damages through discovery of his or her breach of contract claim, and thus, he or she has an adequate remedy at law." *Associated Mortg. Bankers, Inc.*, 159 F. Supp. 3d at 340.

Plaintiffs' accounting claim arises from an alleged relationship that Plaintiffs had with Defendants as a result of a contract. Accordingly, Plaintiffs' accounting claim cannot stand. To the extent Plaintiffs' claims do not arise from a contractual relationship, the allegations here do not support a cause of action for accounting where the allegedly missing money was in the custody and control of Atlas, and transferred by Atlas to unknown recipients at the direction of unknown

parties.  In any event, the Amended Complaint alleges that all available money requested was returned, negating any need for an accounting. (Am. Compl. ¶ 32).

## CONCLUSION

For the foregoing reasons, the Middlegate Defendants' motion to dismiss should be granted in all respects.

Dated:  New York, New York
      April 29, 2021

                                    **WACHTEL MISSRY LLP**

                                    By: *Jason L. Libou*
                                    Jason Libou
                                    Evan Weintraub
                                    One Dag Hammarskjold Plaza
                                    885 Second Avenue
                                    New York, New York 10017
                                    (212) 909-9500
                                    *Attorneys for Defendants Albert Sutton,*
                                    *Elias Sutton a/k/a Elliot Sutton and*
                                    *Middlegate Securities LTD.*