UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERLENE DAYAN and ESTATE OF
RAYMOND DAYAN,

                    Plaintiffs,

        - against -

LEONORA SUTTON a/k/a LENORA SUTTON,
ESTATE OF MAYER SUTTON, ISAAC SUTTON,
ALBERT SUTTON, MORRIS SUTTON and ELIAS
SUTTON a/k/a ELLIOT SUTTON,
and ABC Co., Inc. 1-10,

                   Defendants,

Case No. 1:20-CV-9563
(AKH)

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANT MORRIS SUTTON**

---

**WEINBERG ZAREH MALKIN PRICE LLP**
45 Rockefeller Plaza, 20th Floor
New York, New York 10111

*Attorneys for Defendant Morris Sutton*

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT……………………………………………………………1

PROCEDURAL AND FACTUAL BACKGROUND……………………...…………………..2

LEGAL ARGUMENT…………………………………………………………………..……7

    I.     THE FOURTH AMENDED COMPLAINT FAILS TO MEET THE PLEADING

          STANDARDS OF RULE 8 AND MUST BE DISMISSED ………...………..…..8

    II.    THE FOURTH AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT

          DETAIL TO SUPPORT ANY CAUSE OF ACTION…………...……………...9

          a) The   Fourth Complaint Fails to Sufficiently Allege that Morris Received
             or Benefited From Money Belonging to the
             Plaintiffs………………………………………………………………9

          b) The   Fourth Complaint Fails to Sufficiently Demonstrate that Morris
             Took Possession of Plaintiffs'
             Money……………………………………………………………..10

    III.   THE BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, UNJUST

          ENRICHMENT, CONVERSION, MONEY HAD AND RECEIVED AND

          ACCOUNTING CLAIMS SHOULD BE DISMISSED AS OUTSIDE THE

          APPLICABLE STATUTES OF LIMITATIONS………..……………………12

          a) The Money Had and Received Claim Should be Dismissed as Outside the
             Statute of Limitations………………..……………..…………………12

          b) The Conversion Claim Should be Dismissed as Outside the Statute of
             Limitations…………………………………………………….....12

    IV.   EACH TORT CLAIM IS DUPLICATIVE OF THE BREACH OF CONTRACT

          CLAIM AND MUST BE DISMISSED ………………….....……………..……13

a) The Money Had and Received Claim Should be Dismissed as Duplicative of the Breach of Contract Claim…………………………………………...13

b) The Conversion Claim Should be Dismissed as Duplicative of the Breach of Contract Claim……………………………………………………….…13

V.    PLAINTIFFS' COUNSEL HAS USED THE JUDICIAL SYSTEM TO EFFECTUATE HARRASMENT AND ABUSE AND HE MUST BE SANCTIONED AS A RESULT…………………...………………………....14

CONCLUSION…………………………………………………………………………..15

## TABLE OF AUTHORITIES

**Cases**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n,*
 731 F.2d 112 (2d Cir. 1984) .................................................................................9

*Ashcroft v. Iqbal,*
 556 U.S. (2009) .......................................................................7, 8, 10, 11

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. (2007) .................................................................................7, 8

*Berman v. Sugo LLC,*
 580 F. Supp. 2d 191 (S.D.N.Y. 2008) ......................................................10, 11

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,*
 837 F. Supp. 2d 162 (S.D.N.Y. 2011) ...........................................................13

*Fesseha v. TD Waterhouse Inv. Servs., Inc.,*
 305 A.D.2d 268, 269 (1st Dep't 2003) ..........................................................13

*Goldfine v. Sichenzia,* 73 A.D.3d 854,
 (2d Dep't 2010) .......................................................................................9, 10

*Griffin Woodward, Inc. v. WCSC, Inc.,*
 88 A.D.2d 883 (1982)...............................................................................13

*Harlem Cap. Ctr., LLC v. Rosen & Gordon,*
 *LLC,* 145 A.D.3d 579  (1st Dep't 2016) ..........................................................12

*Lyman v. NYS OASAS,*
 No. 1:12-CV-530, 2013 U.S. Dist. LEXIS 25828 (N.D.N.Y. Feb. 26, 2013)..............7

*Metro. Bank & Tr. Co. v. Lopez,*
 189 A.D.3d 443 (1st Dep't 2020) ...............................................................10

*Onanuga v. Pfizer, Inc.,*
 369 F. Supp. 2d 491 (S.D.N.Y. 2005) ..........................................................12

*Patane v. Clark,*
 508 F.3d (2d Cir. 2007) ............................................................................7

*Seneca Ins. Co. v. Wilcock,*
 2002 WL 1067828 (S.D.N.Y. May 28, 2002) ...............................................12

**Statutes**

CPLR §213 ...................................................................................................................12

CPLR  §214………….………...………………………………………………………….12

F.R.C.P. §12(b)(6) .......................................................................................................1, 7

Defendant Morris Sutton ("Morris" or "Defendant"), by and through his counsel, Weinberg Zareh Malkin Price LLP, respectfully submits this memorandum of law in support of his motion for an order dismissing the Plaintiffs' Fourth Amended Complaint (the "FAC" or "Fourth Complaint") pursuant to Federal Rules of Civil Procedure § 12(b)(6).

**Pursuant to this Court's guidance, and in the interest of efficiency and to minimize the extent of duplication in both the statement of facts and law in support of Morris' motion to dismiss, Morris hereby adopts and incorporates components of the memorandum of law in support of motion to dismiss by defendants Albert Sutton and Elias Sutton a/k/a Elliot Sutton (the "Wachtel Memo") where appropriate and applicable. By virtue of Morris' adopting and incorporation of the components of the Wachtel Memo references below, all arguments and positions of the Wachtel Memo shall equally apply to Morris. Any supplemental law or facts as they pertain to Morris will be included in the applicable sections below.**

## PRELIMINARY STATEMENT

This Court has graciously provided Plaintiffs with leave to amend, along with guidance as how to resolve the deficiencies of each iteration of the initial complaint and, nonetheless, Plaintiff has consistently failed to survive each motion to dismiss. Despite this Court's patience and generosity, Plaintiff – once again – has insufficient basis for alleged claims, and refuses to take this Court's guidance to heart.

Respectfully, Plaintiff must be sent a message that this Court and Federal Courts in general are not a proper forum for pleading by trial and error. This must end.

Like its predecessors, Plaintiffs' Fourth Complaint must be dismissed because it repeats the same mistakes of the prior versions:

- Plaintiffs' allegations and causes of action remain vague and conclusory

- The Fourth Complaint relies on imprecise and fatally flawed group pleadings with general allegations involving the "defendants" or the "Suttons."

- The Fourth Complaint lacks specificity to any particular individual, in particular, Morris.

- The Fourth Complaint does not specify how – when the principals attending or participating in the material meetings passed away years ago – facts alleged today could be anything other than manufactured attorney fiction.

As a result of Plaintiffs' repeated frivolous complaints have causes Morris to expend **nearly one hundred thousand dollars in legal fees** to defend speculative and baseless lawsuit, and sanctions are warranted as a result.

The   FAC was Plaintiffs last opportunity and they have failed again. It is clear, there simply is no basis for Plaintiff's claims.  This Court's repeated dismissals of Plaintiffs' several complaints and admonitions to the Plaintiff have not been respected.  Respectfully, we request this Court grant Morris' motion to dismiss this case in its entirety with prejudice.  Plaintiffs' counsel should be sanctioned for his abuse of the judicial system in violation of FRCP Rule 11, and a hearing should be held to determine the damages suffered by Morris Sutton as a result.

## PROCEDURAL AND FACTUAL BACKGROUND

**Morris hereby adopts and incorporates the Procedural and Factual Background of the Wachtel Memo.**

In an attempt to compensate for these deficiencies and obfuscate the glaring absence of allegations against Morris, Plaintiffs attempt to improperly use group-pleadings against all of the "*Suttons*" or "*defendants*," and in conclusory format.  Significantly, the Fourth Complaint still

2

*alleges nothing about Morris* specifically to bind him to any alleged contract, exercise, or control over Plaintiff's funds or how they acted as part of a general partnership with Mayer.

Plaintiffs alleged that, in approximately July 2006, Raymond Dayan, acting on behalf of himself and his wife, met with Mayer Sutton, allegedly also acting on behalf of himself and his four sons (Isaac, Morris, Albert and Elliot) at the offices of Middlegate Securities Ltd. ("Middlegate") and entered into the alleged contract. (FAC, ¶¶ 30-32, 37-41).  The Fourth Complaint, thus, attempts to *infer* that Morris implicitly assented to the alleged contract based upon his alleged "presence" at "various times" during the 2006 meeting, but otherwise fails to allege any statement or action by Morris that could support a finding that he was a party to this alleged contract.

To be clear, there is *no specific allegation against Morris* whatsoever about his presence or participation. After four attempts, Plaintiffs still cannot allege one single facts about Morris specifically including, his role at the meeting, whether he even attended the meeting, what he agreed to specifically at the meeting, etc.) There is no allegation whatsoever – not one – that Morris received monies, controlled funds, transferred funds, refused to return funds, or has in any way taken a part in the fantastical plot which has clearly been manufactured by Plaintiffs' counsel.

Plaintiffs also fail to explain how they entered into a contract with half a dozen other people, all promising the same thing, but no one putting anything in writing. This is clearly what this Court has now directed Plaintiffs' counsel to do on multiple occasions. Respectfully, with this Court's indulgence, Plaintiffs have now struck out a fourth time. They simply refuse to meet the FRCP pleading requirements.

How Morris is involved in any of these clearly manufactured allegations remains a mystery. While Plaintiffs allege a meeting between Raymond and Mayer, it is entirely *not alleged* how Mayer's agreement to enter into the contract somehow resulted in Morris (and all his brothers) also agreeing to enter into the same precise contract terms due to an "informal association" as "partners in a de facto general partnership." (FAC, ¶ 32).  Other than this conclusory allegation, Plaintiffs provide no basis or allegations to suggest that such a general partnership existed – and nothing with regard to Morris whatsoever.

Plaintiffs further allege in vague and conclusory fashion that in approximately January 2013 and continually until February 2018 Raymond Dayan, plaintiff Merlene Dayan, and/or Plaintiffs' agents requested either by text, over the telephone or face-to-face, from Mayer, Morris, Issac, Albert and/or Elliot (in various permutations) the full and orderly liquidation of any and all investments made by Mayer and defendants. (FAC, ¶ 53).   This allegation is exemplary of Plaintiffs' refusal to abide by the rules of civil procedure – or this Court's specific instructions.

Plaintiffs lump all defendants together, it makes legal conclusions rather than give actual facts. What are Plaintiffs alleging against Morris Sutton specifically? What is Morris Sutton alleged to have done, said, or not done? What dates did someone say something to Morris Sutton? What wrongs is Morris Sutton alleged to have engaged in specifically (as compared to the "Suttons")? The Fourth Complaint remains fatally deficient in any specific allegations against Morris.

Plaintiffs have not alleged any nonconclusory allegations as to when and how the Plaintiffs demanded the return of their funds from Morris, specifically.  Whereas specific

examples are subsequently provided for other defendants, Plaintiffs provide no specific of when or how (text, phone or face-to face) Plaintiffs demanded Morris return their funds.

The only specific allegations pertaining to Morris Sutton are insufficient. The sole allegations against Morris Sutton involve two separate and unrelated text messages, neither of which is sufficient.

First, Plaintiffs allege that in December of 2017, approximately two months after the last check was issued from the bank account in the name of Lenora Sutton, Morris Dayan texted Morris Sutton to determine the status of the repayments. (*Id*., ¶ 60). Significantly, Plaintiffs fail to provide any context for these alleged and distinct text messages, including the interval of time between their alleged occurrences. The Fourth Complaint also contains no allegations linking Morris to any alleged oral contract, or obliging Morris Sutton to have made any payments in connection with the Plaintiffs' alleged demands.

Second, without alleging anything further as to the parties' communications or the involvement of Morris Sutton in trying to settle this matter, Morris Sutton is alleged to have responded to Morris Dayan's text message approximately two months later, on some unspecified day at some unspecified time in February of 2018. (*Id*.). Morris Sutton is alleged to have communicated that, to his knowledge, the funds utilized for repayment, i.e., the bank account in the name of "Lenora Sutton," had been depleted. (*Id*.).

Again, this is woefully inadequate. Plaintiffs notably did not allege that a demand was made to Morris for payment. This alleged text message is not actionable, nor does it show Morris becoming liable in any way. In any event, Morris Sutton's statements about his elderly mother's account is depleted would have been well after any contract, fiduciary relationship, taking of funds, or investment of funds.

In 2018, Morris also indicated he would not become personally involved in any repayment, due to his own financial constraints at the time. (*Id*., ¶ 73).  Plaintiffs try to make a false argument here, that Morris was somehow saying that but for his financial conditions, he would be responsible. This is simply not what their own allegations support.

Plaintiffs spuriously would have this Court conclude that Morris texting to the plaintiffs' son, "that no additional funds were available for repayment" was only because he was "literally borrowing money from my friends to pay my bills until my apt (sic) is sold'". (*Id*. )  This characterization is misleading and infers a logical connection between Morris' two communications that is without basis and simply not consistent with the allegations provided in the FAC.

To be clear, Morris Sutton has never – and is not alleged to have – taken on any liability or obligations with regard to the Plaintiffs.

Plaintiffs' attempt to falsely infer that Morris' isolated statement (that he was borrowing money until his apartment was sold) was the reason Plaintiffs would not be paid is simply false. This self-serving and baseless conclusion is Plaintiff's counsel's attempt to insidiously implicate Morris in the lack of repayments.  Plaintiffs never actually allege that Morris participated in or was in any way involved in the repayment or the ceasing of the repayments. This is because he was not responsible and refused to take any such responsibility.

Furthermore, Plaintiffs then allege to "belief" that "some of the missing money was taken by Morris." (*Id*.)  Plaintiffs' basis for this belief is doubly specious and conclusory. First, Plaintiffs wrongly try to connect two communications: (i)  Morris' alleged communication that no additional funds were available  to the alleged unrelated separate communication that (ii) he was borrowing money from his friends until his apartment was sold.  Second, that this specious

conclusion is the Plaintiffs' basis to believe some of the missing money was taken by Morris—a wild logical leap from two unconnected and alleged communications (one being a in response to Plaintiff's son requesting for a status of the repayment).  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)  (*internal quotation marks omitted).*

Plaintiffs have not alleged in any of the four iterations of complaints that that Morris specifically was in control of, or managing, Plaintiffs' Assets directly, nor do Plaintiffs allege Morris was obligated or admitted to any obligation to make payment to Plaintiffs. Rather, Plaintiffs seek to lay two communications by Morris, out of proper context, in order to encourage the Court to speculate that there may be something more.  Plaintiffs have had ample opportunity to bring allegations sufficient to state a claim, but have not (and cannot) do so.

As discussed, Plaintiffs' attempts to lump Morris into the nebulous "defendants" and/or "Suttons" and then apply vague allegations to this group falls short of this Court's requirements.

## **LEGAL ARGUMENT**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Lyman v. NYS OASAS*, No. 1:12-CV-530, 2013 U.S. Dist. LEXIS 25828, *7 (N.D.N.Y. Feb. 26, 2013) (citing *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the claim's legal sufficiency, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted).

This presumption of truth, however, does not extend to legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Accordingly, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. 678 (*internal quotation marks omitted).*

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim [for] relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible "when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the complaint must be dismissed." *Id.* at 570.

## I.     THE FOURTH AMENDED COMPLAINT FAILS TO MEET THE PLEADING STANDARDS OF RULE 8 AND MUST BE DISMISSED

**Morris hereby adopts and incorporates the above stated section of the Wachtel Memo.**

## II.    THE FOURTH AMENDED COMPLAINT FAILS TO ALLEGED SUFFICIENT DETAIL TO SUPPORT ANY CAUSE OF ACTION

**Morris hereby adopts and incorporates the above stated section of the Wachtel Memo.**

### a)   The   Fourth Complaint Fails to Sufficiently Allege that Morris Received or Benefited From Money Belonging to the Plaintiffs

"The essential elements in a claim for money had and received under New York law are that (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984). Under New York law, a claim for money had and received cannot stand where the plaintiff fails to allege that a defendant received money belonging to the plaintiff or benefitted from said receipt. *See Goldfine v. Sichenzia*, 73 A.D.3d 854, 854 (2d Dep't 2010).

Plaintiffs broadly allege that they ***transferred funds to Atlas*** despite the later, contradictory assertion that they were, "induced by the Suttons to entrust Plaintiffs' assets to them." (FAC ¶ 97). Then without any basis at all, Plaintiffs allege that Atlas permitted transfers to unknown parties, Issac, Morris and/or Lenora Sutton, and/or to parties controlled by, owned by or reporting to Issac Morris and/or Lenora Sutton. (*Id*. ¶ 91).  These allegations are indisputably legal conclusions and act as nothing more than a threadbare recital of the first element of money had and received, namely that Morris, in above described fashion, received the funds belonging to Plaintiffs. Furthermore, the   Fourth Complaint fails to allege any actual benefit to Morris and must be dismissed.

Because Plaintiffs fail to allege that these funds went to Morris or that he received a benefit beyond conclusory statements, such wrongdoing cannot be imputed to Morris. The presumption of truth does not extend to legal conclusion couched as a factual allegation or threadbare recitals of the elements of a claim, merely supported by conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The money had and received claim is insufficiently stated and must be dismissed.

> b) The Fourth Complaint Fails to Sufficiently Demonstrate that Morris Took Possession of Plaintiffs' Money

"[C]onversion requires a showing of plaintiff[s'] ownership or legal right to possession of specific, identifiable property at the time of the alleged conversion and a showing that the defendant wrongfully took possession of the property thereby depriving the plaintiff of its right to possession." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 206 (S.D.N.Y. 2008). A conversion claim cannot stand where the plaintiff fails to allege that a defendant received money belonging to the plaintiff. *See Metro. Bank & Tr. Co. v. Lopez*, 189 A.D.3d 443 (1st Dep't 2020). (dismissing conversion claim where plaintiff "failed to identify a specific fund of money held by [defendant], other than to allege she received unspecified embezzled funds from [co defendant].") (alterations to original); see also *Goldfine v. Sichenzia*, 73 A.D.3d 854, 854 (2d Dep't 2010).

According to the Fourth Complaint, ***Plaintiffs' money was deposited in Atlas***, (FAC ¶ 48-50) Atlas was entrusted with the management of their funds. (*Id*. ¶ 88) and Atlas was permitted to charge fees for the administration of Plaintiffs' accounts. (*Id*. ¶ 44). However, ***Atlas is not even a party to this lawsuit***.

The Fourth Complaint's attempt to tie the Morris to Plaintiff's funds by repeatedly

alleging that all defendants somehow filed "paperwork" with Atlas in 2006 (*Id*. ¶ 44-46). Although the Fourth Complaint asserts, in conclusory and unsupported fashion, that **all defendants** somehow controlled Atlas (*see Id*. ¶ 83), there is nothing to support this allegation and must be disregarded. It is also illogical to allege that a cabal of many people controlled Atlas, and yet Atlas remains not a party to this Action.

Then without any basis at all, Plaintiffs allege that Atlas permitted transfers to unknown parties, Issac, Morris and/or Lenora Sutton, and/or to parties controlled by, owned by or reporting to Issac Morris and/or Lenora Sutton. (*Id*. ¶ 91).  These allegations are indisputably legal conclusions and act as nothing more than a threadbare recital of an element of conversion, namely that Morris wrongfully took possession of the property. *See Berman,* 580 F. Supp. 2d at 206. Another example of Plaintiffs' threadbare recital of this element in conclusory fashion reads, "[d]efendants Isaac, Lenora Sutton and/or Morris took possession of the Atlas accounts' assets for their own use and enjoyment." (TAC ¶ 114).  It bears repeating again, the presumption of truth does not extend to legal conclusion couched as a factual allegation or threadbare recitals of the elements of a cause of action, merely supported by conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Significantly, the Fourth Complaint makes new – albeit conclusory – allegations that can not be based upon facts collected from any living person. The principals at meetings where alleged agreements were made or monies purportedly turned over are no longer on this plane of existence. Plaintiffs could not honestly have manufactured the Fourth Complaint without relying upon flagrant fictitious writing (or soothsaying).

Still missing from the Fourth Complaint are elements such as Morris's receipt of the funds, taking control of the funds, and using the funds for his own wrongful purposes. To the

contrary, there are no specific allegations against Morris in any meaningful way with regard to these elements. Hence, the conversion claim is insufficiently stated and must be dismissed.

### III.   THE BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, UNJUST ENRICHMENT, CONVERSION, MONEY HAD AND RECEIVED AND ACCOUNTING CLAIMS SHOULD BE DISMISSED AS OUTSIDE THE APPLICABLE STATUTES OF LIMITATIONS

**Morris hereby adopts and incorporates the above stated section of the Wachtel Memo.**

a)   The Money Had and Received Claim Should be Dismissed as Outside the Statute of Limitations

The statute of limitations for claims for money had and received is six-years from the date that the initial payment is made. *Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 500 (S.D.N.Y. 2005) citing CPLR §213. As is articulated in the Wachtel Memo, because the allegedly unauthorized transfers occurred between 2009 and 2013 all of Plaintiffs' claims expired by 2019 and this action commenced in November 2020.  The claim for money had and received should be dismissed.

b)   The Conversion Claim Should be Dismissed as Outside the Statute of Limitations

The applicable statute of limitations for a conversion claim is three years from the date that the alleged conversion or taking occurred. *See* CPLR § 214; see also *Harlem Cap. Ctr., LLC v. Rosen & Gordon, LLC*, 145 A.D.3d 579, 580 (1st Dep't 2016). Conversion accrues "at the moment of conversion regardless of when the conversion is discovered." *Seneca Ins. Co. v. Wilcock*, 2002 WL 1067828, at *6 (S.D.N.Y. May 28, 2002). As outlined above and in the Wachtel Memo, all of the transactions that form the basis of Plaintiffs' claims occurred outside the applicable statute of limitations period. The statute of limitations has expired and the

conversion claim should be dismissed.

### IV. EACH TORT CLAIM IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM AND MUST BE DISMISSED

    a)  <u>The Money Had and Received Claim Should be Dismissed as Duplicative of the Breach of Contract Claim</u>

"An action for money had and received does not lie where there is an express contract between the parties." *Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 305 A.D.2d 268, 269 (1st Dep't 2003). Here, the claim for money had and received arises directly from their alleged contractual relationship and must be dismissed.

    b)  <u>The Conversion Claim Should be Dismissed as Duplicative of the Breach of Contract Claim</u>

As is the case with Plaintiffs' other tort claims, "an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract." *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884, 452 N.Y.S.2d 599 (1982) (citations omitted). Instead, "[a] conversion claim may only succeed [] if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (alterations to original).

In support of their conversion claim, Plaintiffs allege that: "Defendants Issac, Lenora Sutton and/or Morris took possession of the Atlas accounts' assets for their own use and enjoyment." (FAC ¶114) and "[s]aid defendants' conversion of the accounts and the funds therein for their own benefit to the exclusion of the plaintiffs…".By comparison, with respect to the breach of contract claims, Plaintiffs allege that "The Suttons have breached the agreement with plaintiffs by (1) allowing plaintiffs' funds to be lost or used for the benefit of others instead

of plaintiff's benefit" (FAC ¶ 83) and "failing to return all of plaintiff's assets to the plaintiffs in the United States from the Atlas accounts controlled by the Suttons."  The alleged wrongs and damages of Plaintiffs' conversion claim are indistinguishable from Plaintiffs' breach of contract claims.  These allegations are duplicative and, as such, the conversion claim should be dismissed.

## V.     PLAINTIFFS' COUNSEL HAS USED THE JUDICIAL SYSTEM TO EFFECTUATE HARRASMENT AND ABUSE AND HE MUST BE SANCTIONED AS A RESULT

**Morris hereby adopts and incorporates the above stated section of the Wachtel Memo.**

This Firm rarely asks for sanctions against opposing counsel. It is something that should be rarely invoked, and only used for egregious conduct. Respectfully, this is the case here. Plaintiffs' counsel has been directed and admonished on multiple occasions to plead with particularity, to plead the elements of the claims, to comply with Rule 11.

These are the very basic requirements under the FRCP, taught to every 1L in law schools throughout the Country. That Plaintiffs' counsel has had four opportunities to comply with Rule 11 highlights even more that a clear message must be sent, respectfully.

Morris Sutton should no longer suffer under the whims of Plaintiffs' fictional trial-and-error-litigation conduct. We urge this court to not only dismiss this action as to Morris Sutton, with prejudice, but to also hold a hearing to determine Morris' costs associated with dismissal of these four fatally flawed complaints and order Plaintiffs to restore these funds to Morris.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Morris Sutton's motion to dismiss should be granted in all respects, and Plaintiffs ordered to pay attorneys fees and costs to Morris Sutton.


Dated:  New York, New York
       July 29, 2022

                                      **WEINBERG ZAREH MALKIN PRICE LLP**

                                      By:_____/s/_____
                                      Omid Zareh, Esq.
                                      ozareh@wzmplaw.com
                                      John T. Fant, Esq.
                                      jfant@wzmplaw.com
                                      45 Rockefeller Plaza, 20th Floor
                                      New York, NY 10111
                                      (212) 899 5472

                                      *Attorneys for Defendant Morris Sutton*