# EXHIBIT B

M2OCdayC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MERLENE DAYAN and ESTATE OF
RAYMOND DAYAN,

                Plaintiffs,

           v.                          20 Civ. 9563 (AKH)
                                       Telephone Conference
LEONORA SUTTON, ESTATE OF
MAYER SUTTON, ISAAC SUTTON,
ALBERT SUTTON, MORRIS SUTTON,
ELIAS SUTTON a/k/a ELLIOT
SUTTON, MIDDLEGATE SECURITIES
LTD. and ABC Co., Inc. 1-10,

                Defendants.

------------------------------x
                                       New York, N.Y.
                                       February 24, 2022
                                       11:00 a.m.

Before:

            HON. ALVIN K. HELLERSTEIN,

                                       District Judge
```

|   |   |
|---|---|
| 1 | APPEARANCES |
| 2 | GABRIEL J. FISCHBARG |
|   |     Attorney for Plaintiffs |
| 3 |   |
|   | WACHTEL & MISSRY LLP |
| 4 |     Attorneys for Defendants Elias Sutton a/k/a Elliot Sutton, |
|   |     Middlegate Securities Ltd. |
| 5 | BY:  EVAN S. WEINTRAUB |
| 6 | WEINBERG ZAREH MALKIN PRICE LLP |
|   |     Attorneys for Defendant Morris Sutton |
| 7 | BY:  OMID ZAREH |
| 8 | COHEN TAUBER SPIEVACK & WAGNER PC |
|   |     Attorneys for Defendant Isaac Sutton |
| 9 | BY:  SARI KOLATCH |
| 10 | DAVID YEGER LAW PLLC |
|   |     Attorney for Defendant Leonora Sutton, |
| 11 |     Estate of Mayer Sutton |
|   | BY:  DAVID YEGER |

M2OCdayC

1       (The Court and all parties appearing telephonically)
2       (Case called)
3       MR. FISCHBARG:  This is Gabriel Fischbarg for the
4  plaintiffs.
5       MR. WEINTRAUB:  Good morning.  Evan Weintraub at
6  Wachtel Missry LLP, for defendants Albert Sutton, Elias Sutton
7  a/k/a Elliot Sutton, and Middlegate Securities LTD.
8       MR. ZAREH:  This is Omid Zareh of Weinberg Zareh
9  Malkin Price for Morris Sutton.
10      MS. KOLATCH:  This is Sari Kolatch, Cohen Tauber
11 Spievack & Wagner, standing in for Stephen Wagner, for Isaac
12 Sutton.
13      MR. YEGER:  This is David Yeger, David Yeger Law PLLC,
14 for defendants Leonora Sutton and the Estate of Mayer Sutton.
15      THE COURT:  Okay.  Who is going to speak for the
16 defendants?
17      MR. WEINTRAUB:  Your Honor, this is Evan Weintraub.
18 I'm happy to go speak for at least my clients, Albert Sutton,
19 Elliot Sutton, and Middlegate Security.
20      THE COURT:  I want one person.  I don't want to be
21 beseeched again.  You all have the same motion to make.  It's
22 not tolerable to get four different briefs, four different
23 motions.
24      You'll speak for everyone, Mr. Weintraub.  If you
25 leave out something, someone else may add.

1               MR. WEINTRAUB:  Thank you, your Honor.
2               THE COURT:  Okay.  Mr. Fischbarg.
3               MR. FISCHBARG:  Yes, Judge.
4               THE COURT:  Are you with me?
5               MR. FISCHBARG:  Yes, I can hear you, yes.
6               THE COURT:  Your basic allegation is one of breach of
7      contract.
8               MR. FISCHBARG:  Yes.
9               THE COURT:  And it's alleged in paragraph 26 of the
10     complaint.
11              MR. FISCHBARG:  I have it.
12              THE COURT:  Between whom is the contract?
13              MR. FISCHBARG:  The plaintiffs on the one hand and --
14              THE COURT:  Both plaintiffs signed it?  Is it a
15     written document?
16              MR. FISCHBARG:  I do not believe there is written
17     document per se, but there are other documents that show the
18     existence of it.
19              THE COURT:  What documents show the existence of it?
20              MR. FISCHBARG:  To go backwards, there were partial
21     repayments of monies paid.  There were monies sent to --
22              THE COURT:  That comes later.
23              MR. FISCHBARG:  Yes.  So chronologically, money was
24     sent to these entities in Europe.
25              THE COURT:  That doesn't mean there was a contract.

1       MR. FISCHBARG:  The allegation is that there was an
2  agreement between the parties about how the money was supposed
3  to be managed.
4       THE COURT:  But you can't get away with an
5  allegation -- this is conclusory.  You're alleging a contract.
6  You have to allege the parties to the contract.
7       MR. FISCHBARG:  I think we did that.
8       THE COURT:  And the date the contract was made,
9  whether it was oral or in writing, what were the terms.
10       MR. FISCHBARG:  Yes.  So we have that.  The terms we
11  have in paragraph 39.  This is an agreement to manage the funds
12  to the benefit of the plaintiff.
13       THE COURT:  Paragraph 39?
14       MR. FISCHBARG:  Yeah.
15       THE COURT:  Paragraph 39 says plaintiff entered an
16  agreement with defendants pursuant to which defendants agreed
17  to manage the plaintiffs' funds for the benefit of plaintiff.
18       All the defendants?
19       MR. FISCHBARG:  Yes, that's the allegation.
20       THE COURT:  Was Leonora supposed to manage?
21       MR. FISCHBARG:  Yes.  Well, she's the executor of the
22  estate of her husband, Mayer.  She's being sued as executor of
23  the estate of.
24       And then there were four brothers who were involved
25  and then there was an entity.

1          THE COURT:  So Mayer Sutton was involved?

2          MR. FISCHBARG:  Yes, he was the father.

3          THE COURT:  Isaac Sutton was involved?

4          MR. FISCHBARG:  Yes, Isaac is a son, Albert is a son,
5 Morris is a son, Elias, also known as Elliot --

6          THE COURT:  You made a contract with all of them?

7          MR. FISCHBARG:  Yes.

8          THE COURT:  Where?

9          MR. FISCHBARG:  Where?  In New York.  They're located
10 in New York.

11         THE COURT:  When?

12         MR. FISCHBARG:  It was made when the money was first
13 invested, which would have been, I guess, in 2006, it says, and
14 it continued through 2018 when the wrongdoing was discovered.
15 So they're managing the money for many years.

16         THE COURT:  All you are doing is alleging money was
17 entrusted to somebody else for management purposes.

18         MR. FISCHBARG:  Yes, and they are getting fees from
19 it.  Sorry to interrupt.  But they're managing for a specific
20 purpose, which we said in paragraph 26, in a conservative
21 manner, primary objective being the capital preservation.  In
22 return, they would typically, as a money manager, would get
23 reasonable fees.  Periodically, they would send money in and
24 then, periodically, money would come out.  So that's the
25 agreement.

1          THE COURT:  The money was given to Atlas.  You don't
2     allege any contract with Atlas?
3          MR. FISCHBARG:  No, Atlas was the entity through which
4     the money was held.  They were a custodian, but they had no
5     decision-making power.
6          THE COURT:  Mr. Fischbarg, this is not an adequate
7     allegation.  If there's a date, it's got to be not
8     approximately 2006, but a precise date if it's a contract, and
9     the parties making the contract must be alleged and it cannot
10    be alleged in a conclusory fashion.  There has got to be an
11    ability to answer this kind of complaint, and it is so
12    conclusory and so over time that it's impossible to answer.  It
13    may be that there was no contract and you just entrusted money,
14    in which case you may have causes of action other than on a
15    contract.
16         MR. FISCHBARG:  You kind of cut out somewhere.  I'm
17    having a bad line understanding you.  You're saying it's a
18    conclusory agreement.  This agreement was upheld by a state
19    court as valid, but you're disagreeing with the state court, it
20    sounds like.
21         THE COURT:  This is my case.
22         MR. FISCHBARG:  Yes, I understand.  But we can --
23         THE COURT:  It's not adequately pleaded.
24         MR. FISCHBARG:  Okay.  That's not the only state case.
25    There are other cases also involved in the same mismanagement

```
 1   of funds by these parties --
 2            THE COURT:  Why did you bring it to the federal court?
 3            MR. FISCHBARG:  -- that are in the court system also.
 4            THE COURT:  Why did you bring this into federal court?
 5            MR. FISCHBARG:  Yes.  So I think this is the only
 6   federal court action.
 7            THE COURT:  Why, if you have other lawsuits?
 8            MR. FISCHBARG:  Why are there other lawsuits?
 9            THE COURT:  You just told me there are other lawsuits
10   in the state courts.
11            MR. FISCHBARG:  Yes, between other victims, with other
12   victims as plaintiffs who have alleged the same wrongdoing who
13   have alleged the same agreement who have alleged the same fact
14   pattern of these funds that disappeared by these parties.  So
15   this is one of many lawsuits and --
16            THE COURT:  Well, I can't understand a lawsuit that
17   names four different people and an entity plus (technical
18   interruption) companies.
19            MR. FISCHBARG:  Yes.  So the premise is that the
20   individuals all acted together with the entity and that the
21   burden -- the fact that there is no written agreement speaks to
22   that matter that this is a loose arrangement where they're all
23   involved.
24            THE COURT:  Loose arrangement is not a contract.
25            MR. FISCHBARG:  Yes, but if there are alter egos and
```

1    agents for each other, which is alleged --
2             THE COURT:  If you're alleging that a number of
3    writings created the contract, you have to allege it.  If you
4    allege that there was a conversation between someone and
5    someone, you have to allege that.
6             MR. FISCHBARG:  Okay.  I understand.
7             THE COURT:  You can't get away with this kind of
8    allegation.
9             MR. FISCHBARG:  I follow.  I understand.
10            THE COURT:  It's not logical to believe that the
11   contract was Mayer and Isaac and Albert and Morris and Elias
12   and Middlegate.
13            MR. FISCHBARG:  Right.  But if they're acting as alter
14   egos, then you can allege that.  But I understand you want a
15   specific who said what to whom and when.
16            THE COURT:  They're not alter egos, they're different
17   people.  If you want to allege alter egos, you can allege that
18   afterwards, but if there is a contract, it's got to be precise.
19            MR. FISCHBARG:  Okay.
20            THE COURT:  Otherwise, you probably just transferred
21   money and you have a receipt or something of that nature.  And
22   you can't sue people if you have given money to an institution
23   without alleging the relationship between the people in the
24   institution.
25            MR. FISCHBARG:  Right.  Well, we did allege the

1  relationship. That's in the complaint.

2              THE COURT: Where is it alleged?

3              MR. FISCHBARG: It's all through paragraphs -- starts

4  on paragraph 5, goes through paragraph 5, 6, 7, 8, 9. It

5  explains the relationship with the entity, Middlegate.

6              THE COURT: Paragraph 5 alleges that everyone is a

7  member of the same Sephardic community in Flatbush and in Deal.

8              Paragraph 6 is that Middlegate Securities Ltd. is a

9  broker-dealer through which the Sutton's operated and then they

10 founded.

11             MR. FISCHBARG: And in the last sentence, Isaac Sutton

12 was registered at Middlegate. I'm reading it now, too, but

13 they're all registered there and working there and part owners

14 of Middlegate.

15             THE COURT: That doesn't mean they're personally

16 liable.

17             MR. FISCHBARG: Yes, it does not mean that, but later

18 on, we allege that they're alter egos from Middlegate.

19             THE COURT: You can't get away with alleging

20 conclusory alter egos. If there is a corporate form, then

21 you're dealing with a corporation.

22             Another question, is Middlegate a limited liability

23 company or a corporation and how do you know?

24             MR. FISCHBARG: I think it's a corporation.

25             THE COURT: How do you know?

1    MR. FISCHBARG:  I remember looking it up online.  I
2 think it says -- let's see.  Yes, it's a New York corporation.
3    THE COURT:  How do you know, I say.
4    MR. FISCHBARG:  I remember looking it up on the New
5 York Secretary of State website and it's alleged in
6 paragraph 6.
7    THE COURT:  Okay.  If you're dealing with Middlegate
8 and you're dealing with Middlegate and Middlegate is a
9 defendant and a party to the contract, others may be liable or
10 not, but it's very hard in New York to pierce the corporate
11 veil.  If you want to pierce the corporate veil, you have to
12 alleged just why you're piercing the corporate veil.
13    MR. FISCHBARG:  All right.  So I think I understand
14 where you're going.  So you prefer that if I can file an
15 amended complaint --
16    THE COURT:  I don't prefer, Mr. Fischbarg.
17    MR. FISCHBARG:  I'm sorry.  Prefer is the wrong word.
18 You're demanding and ordering, which is fine.  I have no
19 problem filing an amended complaint specifying who said what to
20 whom and who the specific party that was contracted with and
21 whether the other persons are being sued as alter egos, but not
22 the primary party to the contract.  I can explain that, also.
23    THE COURT:  If you have a contract, the defendants
24 point out that you can't also sue for common law fraud or fraud
25 of the inducement or --

1  MR. FISCHBARG:  Right, which I have not.  I've not
2  sued for fraud or fraud in the inducement.  We sued for unjust
3  enrichment in the alternative.  In the event that the
4  factfinder finds that there was no contract, then we are
5  allowed to sue in the alternative under a theory of unjust
6  enrichment.  So that's the premise of the lawsuit.
7  THE COURT:  It doesn't say that.
8  MR. FISCHBARG:  It doesn't say in the alternative?
9  THE COURT:  No.
10  MR. FISCHBARG:  Okay.  I guess I'll have to fix that.
11  That was the premise on the motion to dismiss that the argument
12  was that it was in the alternative, and that's what the other
13  judge in the state court found, that if there is no contract in
14  the alternative --
15  THE COURT:  Don't tell me what another judge in the
16  state court does.  If there is a written opinion, I'll read it.
17  MR. FISCHBARG:  There is a written opinion.  It was
18  attached as Exhibit C and Exhibit 4 to the opposition.  It was
19  33 pages.  And that judge, I thought he was very detailed on
20  his analysis in the same identical situation as this one.
21  THE COURT:  I'm talking about federal court and not in
22  the state court.
23  MR. FISCHBARG:  Right.  So, I thought --
24  THE COURT:  Let me hear from Mr. Weintraub.
25  MR. WEINTRAUB:  Thank you, your Honor.  Your Honor,

you hit the nail on the head. You correctly point out, as we did in our motion papers, that the complaint is merely a hodgepodge of conclusory and vague allegations.

THE COURT: Don't repeat what I've already said. Is there anything else you want to bring out?

MR. WEINTRAUB: Yes, your Honor. Even if the plaintiff is granted leave to amend, we believe the amendment would be futile because as we also argued in our papers each one of the claims that were alleged in this case against the defendants are barred by the relevant statute of limitations. Specifically, the plaintiffs allege that the monies were deposited into the Swiss Bank at last in 2006.

And then, in paragraph No. 34 --

THE COURT: Let me cut you short, please, Mr. Weintraub.

MR. WEINTRAUB: Yes.

THE COURT: They allege that they made a demand, they got some money and not more. So the breach occurred not when they entrusted the money, but when they weren't paid the money. That's within the statute of limitations.

MR. WEINTRAUB: Respectfully, your Honor, I believe that the allegations are that the defendants transferred money from the Atlas account to unknown recipients during the time period of 2006 to 2013. And we've cited case law that provides that the breach occurs when these transfers occur, even if it's

unknown to the plaintiff at that time, specifically the *Ely-Cruikshank Co. v. Bank of Montreal* case. Therefore, your Honor, if --

THE COURT: This is not a complaint against transfers or alleged an explanation. It's surplusage. The cause action is made out when there is a demand and a failure to return.

MR. WEINTRAUB: Except, your Honor, that they don't even specifically say who the demand was made upon.

THE COURT: That's a very good point.

MR. WEINTRAUB: So there is no information of any specific demand that was made upon any of the defendants here at any point in time for the return of the money. The only allegation that we see in the complaint is reference to some text message with one of the defendants, Morris Sutton, in which it wasn't a specific demand made. And again, therefore, your Honor, we still believe that all of the causes of action are time barred.

Your Honor, I would also like to --

THE COURT: Just look at paragraph 28. In approximately July 2016 — it's within a breach of contract lawsuit — sue their son, Morris D., requested the full and orderly liquidation of any investments made with the plaintiff's funds and the repayment, and in response, some money was given and then it stopped.

I agree that there has to be much more specificity

1  here, but that brings the plaintiff within the cause of action
2  within the statute of limitations.
3         MR. WEINTRAUB:  All I would point out, your Honor, is
4  in those two paragraphs, they do not allege whom the demand was
5  made upon.  All they say is the plaintiff's son, Morris, made a
6  request for the plaintiff's --
7         THE COURT:  You're correct and Mr. Fischbarg will have
8  to fix that up.
9         MR. FISCHBARG:  Yes, I will fix that.
10         MR. WEINTRAUB:  Your Honor, if I may.  Plaintiff's
11  counsel makes reference to a New York State action in which
12  he's asking your Honor to rely upon to make a determination in
13  this case.
14         First of all, on the grounds of issue preclusion.  As
15  we set forth in our papers, this is not a situation where issue
16  preclusion applies.  They cannot meet any of the elements, for
17  example, that there are identical issues raised, that there
18  were identical parties, that the parties had litigated and a
19  fair and full opportunity to litigate, and that resolution is
20  necessary to support a valid and final judgment.
21         Specifically, Judge, there is, as we cited case law
22  that a Supreme Court denial of a motion to dismiss is not a
23  final judgment --
24         THE COURT:  Mr. Weintraub, at this point, I'm not
25  ruling on the issue of preclusion.  I'm ruling that the

1     complaint is vague, conclusory, and invalid, and there is going
2     to be a repleading.  So you can save that motion for later.
3              Is there anything else you want to say?
4              MR. WEINTRAUB:  No, your Honor.
5              THE COURT:  Mr. Fischbarg, how much time do you need?
6              MR. FISCHBARG:  Three weeks, please.
7              MR. ZAREH:  Your Honor, this is Omid Zareh.  May I
8     please be heard?
9              THE COURT:  Do you have anything further to say or
10    different to say?
11             MR. ZAREH:  I do, your Honor.
12             THE COURT:  Say it.
13             MR. ZAREH:  Thank you, Judge.  Your Honor, I represent
14    Morris Sutton individually.
15             In addition to what your Honor has said and what
16    Mr. Weintraub has pointed out, we just want to briefly
17    acknowledge to the Court that we haven't been served.  The
18    affidavit of service says that he served his mother.  The
19    allegations are that he's a brother or a son or something like
20    that.  We would like to point that out to the Court, even if
21    there is an amended complaint, a second or third amended
22    complaint at this point, we just want to point that out.
23             Thank you, your Honor.
24             THE COURT:  Mr. Fischbarg, you want to respond to
25    that.

1           MR. FISCHBARG:  He was served at his residence upon a
2    person of age and it was mailed thereafter, the copy of the
3    complaint, so I don't --
4           THE COURT:  A mailing thereafter?
5           MR. FISCHBARG:  Yes.
6           THE COURT:  That complies with the New York law and
7    service process, doesn't it?
8           MR. FISCHBARG:  Yes.
9           MR. ZAREH:  Respectfully, gentlemen, the affidavit of
10   service, which is attached to Mr. Fischbarg's papers, state
11   that it was left with Leonora Sutton at Leonora Sutton's house
12   and then mailed to the same house.
13          THE COURT:  And Morris doesn't live there?
14          MR. ZAREH:  Morris doesn't vote there, doesn't live
15   there, doesn't, you know, that's correct, Judge.  Respectfully,
16   we've given an affidavit responding to that effect.
17          THE COURT:  Mr. Fischbarg, what do you say to that?
18          MR. FISCHBARG:  We paid a lot of money for a skip
19   trace to the process serving company and that's the address
20   they gave us as his last known address, and that is an address
21   associated with him.  So if they're trying to play games that
22   he doesn't live there, there is not much I can do about that.
23          THE COURT:  I'll take that under advisement.  Anything
24   else?
25          MR. ZAREH:  Thank you, your Honor.  No, your Honor.

|   |   |
|---|---|
| 1 | THE COURT:  Okay.  So you want three weeks, |
| 2 | Mr. Fischbarg? |
| 3 | MR. FISCHBARG:  Yes. |
| 4 | THE COURT:  I'll give you to March 25, but don't ask |
| 5 | me for any adjournments.  That's one extra week. |
| 6 | MR. FISCHBARG:  Thank you, Judge. |
| 7 | THE COURT:  And I think within 10 days after or two |
| 8 | weeks after that the motions are filed, we'll give defendants |
| 9 | more time.  So the answers or motions must be filed by |
| 10 | April 15. |
| 11 | Thank you very much. |
| 12 | * * * |