UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERLENE DAYAN and ESTATE OF RAYMOND DAYAN,<br><br>                              Plaintiffs,<br><br>        - against -<br><br>LEONORA SUTTON a/k/a LENORA SUTTON, ESTATE OF MAYER SUTTON, ISAAC SUTTON, ALBERT SUTTON, MORRIS SUTTON, ELIAS SUTTON a/k/a ELLIOT SUTTON, and ABC Co., Inc. 1-10,<br><br>                              Defendants, | Case No. 20-CV-9563 (AKH) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS FOURTH AMENDED COMPLAINT
BY DEFENDANTS ALBERT SUTTON AND
ELIAS SUTTON a/k/a ELLIOT SUTTON**

**WACHTEL MISSRY LLP**
One Dag Hammarskjold Plaza
885 Second Avenue
New York, New York 10017

{000530-033/00351111-2}

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................ 1

PROCEDURAL AND FACTUAL BACKGROUND ...................................................... 3

LEGAL ARGUMENT ........................................................................................................ 11

  I.  THE FOURTH AMENDED COMPLAINT FAILS TO MEET THE PLEADING STANDARDS OF RULE 8 AND MUST BE DISMISSED ........................................... 11

  II.  THE FOURTH AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT DETAIL TO SUPPORT ANY CAUSE OF ACTION ..................................................... 13

      a.  The 4th Am. C. Fails to Allege the Existence of a Valid Contract ............................. 13

      b.  The 4th Am. C. Fails to Allege a Fiduciary Relationship ........................................... 17

      c.  The 4th Am. C. Fails to Demonstrate that Defendants Benefited from the Transferred Funds ....................................................................................................................... 17

      d.  The 4th Am. C. Fails to Allege that Defendants were in Control or Possession of Plaintiffs' Money ..................................................................................................... 18

  III.  THE BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, UNJUST ENRICHMENT, AND ACCOUNTING CLAIMS SHOULD BE DISMISSED AS OUTSIDE THE APPLICABLE STATUTES OF LIMITATIONS ................................ 19

      a.  The Breach of Contract Claim Should be Dismissed as Outside the Statute of Limitations ................................................................................................................ 19

      b.  The Breach of Fiduciary Duty Claim Should be Dismissed as Outside the Statute of Limitations ................................................................................................................ 20

      c.  The Unjust Enrichment Claim Should be Dismissed as Outside the Applicable Statute of Limitations ........................................................................................................... 21

      d.  The Accounting Claim Should be Dismissed as Outside the Applicable Statute of Limitations ................................................................................................................ 22

IV.  EACH TORT CLAIM IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM
AND THUS MUST BE DISMISSED ............................................................................ 22

    a.  The Breach of Fiduciary Duty Claim Should be Dismissed as Duplicative of the Breach
of Contract Claim ..................................................................................................... 22

    b.  The Cause of Action for Unjust Enrichment Should be Dismissed Because the Alleged
Relationship Between Plaintiffs and Defendants is Governed by a Contract ............. 23

    c.  The Cause of Action for Accounting Should be Dismissed Because the Alleged
Relationship Between Plaintiffs and Defendants is Governed by a Contract ............. 24

V.  PLAINTIFFS' COUNSEL HAS USED THE JUDICIAL SYSTEM TO EFFECTUATE
HARASSMENT AND ABUSE AND HE MUST BE SANCTIONED AS A RESULT . 24

CONCLUSION ......................................................................................................................... 27

# TABLE OF AUTHORITIES:

**Cases:**                                                                                          **Page(s):**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................ 11

*Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC,*
   159 F. Supp. 3d 324 (E.D.N.Y. 2016).............................................................. 23, 24

*Atuahene v. City of Hartford,*
   10 F. App'x 33 (2d Cir. 2001) ............................................................................ 11

*Baiul v. NBC Sports,*
   No. 15-CV-9920 (KBF), 2016 WL 1587250 (S.D.N.Y. Apr. 19, 2016) ................. 21

*Balta v. Ayco Co., LP,*
   626 F. Supp. 2d 347 (W.D.N.Y. 2009) ............................................................... 20

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................ 11

*Berman v. Sugo LLC,*
   580 F. Supp. 2d 191 (S.D.N.Y. 2008) ................................................................. 13

*Bytemark, Inc. v. Xerox Corp.,*
   342 F. Supp. 3d 496 (S.D.N.Y. 2018)................................................................. 23

*Ciccone v. Hersh,*
   530 F. Supp. 2d 574 (S.D.N.Y. 2008)................................................................. 16

*Cohen v. Dunne,*
   2017 WL 4516820 (S.D.N.Y. Sept. 27, 2017) ...................................................... 21

*Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.,*
   988 F.3d 127 (2d Cir. 2021) ................................................................................ 19

*Corsello v. Verizon New York, Inc.,*
   18 N.Y.3d 777 (2012) ......................................................................................... 23

*Czernicki v. Lawniczak,*
   74 A.D.3d 1121 (2d Dept 2010)........................................................................... 12

*Dayan Enterprises, Corp. v. Nautica Apparel, Inc.,*
   2003 WL 22832706 (S.D.N.Y. Nov. 26, 2003) ...................................................... 18

*E-Glob. Alls., LLC v.* Anderson,
    2011 WL 8879268 (S.D.N.Y. May 11, 2011)............................................................ 22

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.,*
    837 F. Supp. 2d 162 (S.D.N.Y. 2011)........................................................ 11, 22, 24

*Ely-Cruikshank Co. v. Bank of Montreal,*
    81 N.Y.2d 399 (1993) ........................................................................................... 19

*Evangelista v. Mattone,*
    44 A.D.3d 704 (2d Dept 2007)............................................................................. 21

*Glynwill Invs., N.V. v. Prudential Sec., Inc.,*
    1995 WL 362500 (S.D.N.Y. June 16, 1995)........................................... 11, 19, 20

*Howell v. Am. Airlines, Inc.,*
    2006 WL 3681144 (E.D.N.Y. Dec. 11, 2006) ..................................................... 14

*James v. Countrywide Fin. Corp.,*
    849 F. Supp. 2d 296 (E.D.N.Y. 2012).................................................................. 14

*Kaye v. Grossman,*
    202 F.3d 611 (2d Cir. 2000)................................................................................. 17

*Kreiss v. McCown DeLeeuw & Co.,*
    37 F. Supp. 2d 294, 299 (S.D.N.Y. 1999) ........................................................... 16

*Malley v. Corp. Couns. of City of New York,*
    9 F. App'x 58 (2d Cir. 2001) ............................................................................... 25

*Marcal Fin. SA v. Middlegate Sec. Ltd.,*
    2022 WL 677344 (N.Y. App. Div. Mar. 8, 2022)..................................... 17, 19, 20

*McCarthy v. Dun & Bradstreet Corp.,*
    482 F.3d 184 (2d Cir. 2007)................................................................................. 11

*Metro. Bank & Tr. Co. v. Lopez,*
    189 A.D.3d 443 (1st Dep't 2020)......................................................................... 18

*Morley v. Ciba-Geigy Corp.,*
    66 F.3d 21 (2d Cir. 1995)..................................................................................... 25

*Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.,*
    14 A.D.3d 678 (2d Dep't 2005) ........................................................................... 17

*Onanuga v. Pfizer, Inc.,*
    369 F. Supp. 2d 491 (S.D.N.Y. 2005) ................................................................. 21

*Pirri v. Cheek*,
   2019 WL 2472438 (S.D.N.Y. June 13, 2019) ........................................................................ 21

*Salzmann v. Prudential Sec. Inc.*,
   No. 91 CIV. 4253 (KTD), 1994 WL 191855 (S.D.N.Y. May 16, 1994) ................................ 20

*Spinelli v. Nat'l Football League*,
   96 F. Supp. 3d 81 (S.D.N.Y. 2015) ....................................................................................... 14

*Zaldivar v. City of Los Angeles,*
   780 F.2d 823 (9th Cir. 1986) ................................................................................................. 25

## **Rules**

CPLR 213 ...................................................................................................................... 19,20, 21

CPLR 214 ............................................................................................................................... 20

FRCP 11 ....................................................................................................................... 1,5,24,26

FRCP 12 ................................................................................................................................... 1

Defendants Albert Sutton ("Albert") and Elias Sutton a/k/a Elliot Sutton ("Elliot," together with Albert, "Moving Defendants") respectfully submit this memorandum of law in support of their motion for an order pursuant to FRCP 12(b)(6) dismissing the Fourth Amended Complaint (the "4th Am. C.") of plaintiffs Merlene Dayan ("Merlene") and Estate of Raymond Dayan ("Raymond," together with Merlene, the "Plaintiffs").[1]

## PRELIMINARY STATEMENT

While this Court has dismissed Plaintiffs' initial Complaint and each subsequent iteration of that pleading for failure to state a claim, each time it has also generously provided Plaintiffs with leave to amend, describing not only the deficiencies therein but specifying the information required for each cause of action to survive dismissal (and a cautionary warning to comply with Rule 11). Instead of complying with the Court's clear instructions set forth in these orders, the 4th Am. C. again regurgitates the exact same conclusory, self-serving, and insufficient allegations that warranted dismissal <u>four</u> (4) separate times over the past two (2) years. Enough is enough.

To give the appearance of compliance with this Court's Order, the 4th Am. C. merely splits the foundational factual paragraph of previous iterations of the Complaint (Complaint ¶ 26, First Amended Complaint ("FAC") ¶ 26, Second Amended Complaint ("SAC") ¶ 26, and Third Amended Complaint ("TAC") ¶ 26), into 11 separate allegations. (4th Am. C. ¶¶ 30-41). Nevertheless, each allegation continues to rely upon conclusory assertions that "all defendants" were acting as a "de facto general partnership" and therefore are liable for the loss of Plaintiffs' funds that Plaintiffs deposited and invested in a Swiss bank as part of an alleged oral contract in 2006 between Raymond and Mayer Sutton ("Mayer").

---

[1] References to defined terms herein shall refer to exhibits attached to the declaration of Evan Weintraub, dated July 29, 2022, submitted in support of Moving Defendants' motion to dismiss the 4th Am. C.

The 4th Am. C. still fails to allege any statement or action made by Moving Defendants to bind them to any alleged contract, nor does it explain how Moving Defendants exercised control over Plaintiffs' funds or were acting as part of a general partnership with Mayer. Indeed, the only relevant allegations to a breach of contract claim are that Raymond allegedly met with Mayer (not Moving Defendants) in 2006, opened accounts and deposited funds into Atlas Capital S.A. ("Atlas"), a third-party Swiss banking institution (not with Moving Defendants), and provided Atlas with discretionary authority to manage Plaintiffs' funds (again, not Moving Defendants).

Further, for the first time, the 4th Am. C. repeatedly cites to non-descriptive "paperwork" that allegedly "confirms" that Plaintiffs had a "contractual" relationship with Moving Defendants. To the contrary, this paperwork only "confirms" that Plaintiffs had a relationship with Atlas. Confusingly, instead of suing Atlas, the 4th Am. C. relies upon (i) conclusory allegations, (ii) implied guilt by familial association (i.e. the Suttons are allegedly related to "the Dweks" who purportedly own Atlas) and (iii) references to unrelated lawsuits in other courts which involve some of defendants (but _not_ Moving Defendants) to assert that Moving Defendants stole Plaintiffs' funds. These ridiculous and baseless allegations cannot support any claims against Moving Defendants.

Moreover, Plaintiffs' counsel's behavior in this lawsuit is textbook sanctionable conduct under FRCP 11. The 4th Am. C. continuously regurgitates the exact same allegations that were dismissed repeatedly without complying with this Court's orders and incorporates additional, irrelevant allegations but fails to divulge the sources of information supporting them. Indeed, no one with personal knowledge of these facts is even alive as both Raymond and Mayer have been deceased for six years.

Further, the aforementioned "paperwork" that confirms that Plaintiffs had a relationship with Atlas (not Moving Defendants) evidences more of Plaintiffs' counsel's sanctionable conduct. Indeed, Plaintiffs' counsel was in possession of this paperwork when he filed this lawsuit in 2020, yet he waited two (2) years and five (5) iterations of the Complaint before even mentioning it, and only did so at the explicit direction of the Court. Nevertheless, despite knowing Moving Defendants were not liable in this action, Plaintiffs' counsel continued to pursue this action for two years on baseless assertions of guilt by familial association in the hopes of obtaining a quick settlement. Counsel's actions have caused Moving Defendants to expend approximately $97,734.60 (not including the time spent on this motion) in legal fees to defend a groundless lawsuit and sanctions are warranted as a result.

In sum, just like each predecessor pleadings, the 4th Am. C. is a sham. This Court should grant Moving Defendants' motion, dismiss this case in its entirety for failure to state a claim, and permanently close the door to any further amendments. Moreover, Plaintiffs' counsel should be sanctioned for his harassing conduct and abuse of the judicial system in violation of FRCP Rule 11.

## **PROCEDURAL and FACTUAL BACKGROUND**

The First Two Complaints

This action was initiated on November 13, 2020. Without serving the Complaint, Plaintiffs filed the First Amended Complaint ("FAC") on March 1, 2021, alleging six (6) causes of action (1) Breach of Contract; (2) Breach of Fiduciary Duty; (3) Unjust Enrichment; (4) Money Had and Received; (5) Conversion; and (6) Accounting. The crux of the allegations was that in approximately 2006, when Raymond was 80 years old and Merlene was 71 years old, unidentified members of the defendants agreed to manage approximately $1,695,908 funds co-owned by

Plaintiffs in a conservative manner, the primary objective being capital preservation (FAC ¶ 26), and any investments made by all defendants of Plaintiffs' funds would be liquid or would be able to be liquidated within a reasonable time. (*Id*.).  In return for the defendants' management of Plaintiffs' funds as set forth above, defendants were entitled to charge a reasonable fee.  (*Id*.).

On April 29, 2021, Moving Defendants (joined by former defendant Middlegate Securities Ltd.) moved to dismiss the FAC, for, among other things, failure to state a claim. (ECF No. 21). The Court held oral argument on February 24, 2022, where it held that the FAC failed to allege the terms of a "contract" (February 24, 2022 Oral Argument Transcript, 7:10-12) and dismissed same with leave to amend. The Court instructed Plaintiffs' counsel that the next iteration of the Complaint must plead the terms of the alleged contract with specificity because "there has got to be an ability to answer this kind of complaint, and it is so conclusory and so over time that it's impossible to answer." (*Id*.).

That same day, the Court filed a post-conference order ("Post-Conference Order") affirming the same points stated on the record during oral argument (ECF Doc. 57) and expounded specific, written instructions to Plaintiffs' counsel:

> [With respect to Plaintiffs' claim for breach of contract,] Plaintiffs must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue.  As relevant here, Plaintiffs must identify the specific parties to the contract, the date on which it was made, whether it was oral or written, and what the terms of the contract were…
>
> [With respect to Plaintiffs' claim for breach of fiduciary duty,] Plaintiffs must identify to which defendants' money was transferred, and how that transfer gives rise to fiduciary obligations;
>
> [With respect to Plaintiffs' claims for money had and received, conversion, unjust enrichment, and accounting,] Plaintiffs must specify which defendants received money belonging to Plaintiffs and how such actions give rise to each claim; and

> [Finally, the Court stated that] Plaintiffs must specify that they plead Counts II through VI in the alternative to Count I.

(Post Conference Order, pp. 1-2).

<u>The Second Amended Complaint</u>

On March 25, 2022, Plaintiffs' counsel filed the Second Amended Complaint ("SAC"), which failed to specify or develop the facts as instructed by the Court. (ECF No. 58). Instead, the SAC was a veritable copy of the FAC (almost word for word), making only minor, trivial changes. (*Id.*).[2] Counsel for Moving Defendants, joined by counsel for Morris Sutton, responded with a letter to Plaintiffs' counsel threatening Rule 11 sanctions for his flagrant failure to comply with the Post-Conference Order. In response thereto, and without leave or right, Plaintiffs' counsel filed the Third Amended Complaint ("TAC") on April 8, 2022.

<u>The Third Amended Complaint</u>

The TAC served as yet another example of Plaintiffs' counsel's disrespect for both this Court and the judicial system, again copying and pasting the same allegations as the FAC (and SAC) with only trivial, inconsequential changes and additions (ECF No. 62).[3] Accordingly, on May 3, 2022, this filing was met with another motion to dismiss by all defendants. (ECF. Nos. 67-76). On June 21, 2022, eleven days after the return date of same, the Court granted defendants' motions in the entirety, and provided Plaintiffs with one <u>last and final</u> opportunity to amend by

---

[2] The Complaints are replete with allegations copied directly from a complaint in an unrelated New York State Supreme Court action (*Marcal v. Sutton, et al.*, NY Sup. Index No. 653351/2015) (the "NY State Action"). Further, Plaintiffs' counsel relied on the NY State Action for the majority of his oppositions to Moving Defendants' motions to dismiss. Doing as little work as possible (including complying with Rule 11) appears to be counsel's modus operandi.

[3] A redline comparison of the FAC and TAC is attached to Declaration of Evan Weintraub in Support of Moving Defendants' Motion to Dismiss the TAC, dated May 3, 2022, as Exhibit D. (See ECF 68).

July 15, 2022 (the "Order") (ECF 85).

The Order

The Court, through the Order, again propounded specific questions that Plaintiffs <u>must</u>

answer in the 4th Am. C. to comply with FRCP 11 and survive dismissal.

> The allegations of a contract are insufficient to plead a breach of contract claim. It is not said whether the contract was written or oral; if oral, who said what to whom, and where and when, to constitute an offer and acceptance; what the rights and obligations were of each party; how much was to be invested and the investment and management responsibilities of Mayer Sutton and his company, Middlegate Securities, to manage Plaintiffs investment in Atlas Securities; and whether the real party-in-interest is Middlegate or Atlas, and not Mayer Sutton.

(Order, p. 1).

> A breach of fiduciary duty is not sufficiently alleged to plead a valid claim… Was there a writing, or writings, imposing these obligations? Was there an entrustment of funds to Defendants under terms that could make Defendants a fiduciary? What were the terms? Plaintiffs allege that Raymond Dayan invested funds in Atlas, but was there an existing brokerage account, or a new one? Are there writings? What was the mix of obligations that someone at Atlas, or Middlegate, or Mayer Sutton accepted?

(Order, p. 2).

With respect to the remaining four causes of action, the Court stated that "the conclusory

charges are insufficient" because "the sources of information enabling Plaintiffs to plead [these

counts] are not alleged." (*Id.*) The Court went on to note that if Plaintiffs amend, they <u>must</u> identify

the sources of information that allow them to satisfy Rule 11, "since both Raymond Dayan and

Mayer Sutton are dead [] and no writings are alleged." (Order, 2-3, emphasis supplied).

The Fourth Amended Complaint

Against all logic and reason, Plaintiffs' counsel filed the 4th Am. C. on July 15, 2022 (ECF

No. 87), which contains the <u>exact same allegations as each and every previous iteration of the</u>

Complaint.[4] This time, however, Plaintiffs' counsel has split the foundational paragraph of the first four iterations of the Complaint into 11 separate allegations in the hope that the Moving Defendants (and the Court) will not realize that these 11 paragraphs fail to add anything new. (*compare* FAC ¶ 26, SAC ¶ 26, TAC ¶ 26 with 4th Am. C. ¶¶ 30-41)

Nevertheless, to steal a phrase from this Court, "stripped of [its] confusing mix of rhetorical allegations" (Order, p. 1), Plaintiffs' story remains unchanged: in 2006, Raymond, acting on behalf of himself and his wife, met with Mayer Sutton at non-party Middlegate Securities, Ltd.'s offices. At this meeting Plaintiffs and all defendants (through Mayer) somehow entered into an "oral contract" in which all defendants agreed to act as Plaintiffs' investment managers, responsible for an unknown amount of Plaintiffs' assets including "stocks, bonds, and cash." (4th Am. C. ¶ 30-41).

The terms of the contract are the same vague and conclusory assertions as those alleged in each prior iteration of the Complaint (which the Court already found wanting):

1. Plaintiffs' co-owned funds would be managed for their "exclusive benefit and in their best interests," meaning to "preserve capital and provide income," and would include a "balanced mix of conservative and risky investments." (*Compare* 4th Am. C. ¶¶ 39-40; *with* FAC ¶ 26, TAC ¶ 26 (managing in a "conservative" and "professional" manner with the goal being "capital preservation").
2. Any investments made by defendants of Plaintiffs' funds would be liquid or would be able to be liquidated within a reasonable time. (*Compare* 4th Am. C. ¶ 36-38 *with* FAC ¶ 26; TAC ¶ 26);
3. All defendants would be permitted to charge "amounts set by Swiss tariffs for annual management, custodian and administration fees on the total amount under management, for commissions on every investment trade, and other fees typically associated with investment brokerage accounts such as margin interest." (*Compare* 4th Am. C. ¶ 41; *with* FAC ¶ 26; TAC ¶ 26).[5]

The 4th Am. C. attempts to infer that Moving Defendants acquiesced to the alleged

---

[4] The 4th Am. C. drops the claims for conversion and money had and received against Moving Defendants.

[5] The inclusion of the nonsensical phrases "Mayer orally agreed…" or "Raymond orally accepted" (4th Am. C. ¶¶ 33, 34, 37 - 41) does not alter the ineluctable conclusion that these are the exact same allegations as every other iteration of the Complaint.

"contract" merely based upon their alleged "presence" at "various times" during the 2006 meeting, (4th Am. C. ¶ 36) but otherwise fails to allege any statement or action by Moving Defendants that could support a finding that they were parties to this alleged "contract." Plaintiffs' counsel further relies upon the conclusory assertion that Moving Defendants were partners in a "de facto general partnership" (whatever that means), of which Mayer was allegedly the figurehead, to impute liability, but again fails to support such a conclusion. Instead, Plaintiffs' counsel simply relies upon guilt by familial association (*id.* ¶ 36) (which is legally insufficient).

Plaintiffs' counsel next asserts (without any explanation as to the source of this information) that within two weeks after the 2006 meeting, Raymond provided <u>all defendants</u> with personal information and that <u>all defendants</u> used this information to prepare and file "French-language paperwork" at **<u>Atlas</u>** in <u>Raymond's</u> name. (4th Am. C. ¶¶ 43-44). Plaintiffs assert that the same paperwork "confirms the oral agreement between the parties that the Suttons <u>through Atlas</u>" (1) could charge fees; and (2) had discretionary authority to manage the accounts. (*Id.* ¶¶ 44-45 (emphasis added)). These allegations add nothing new to claims against Moving Defendants because, even accepting them as true, the paperwork merely confirms that **<u>Atlas</u>**, not Moving Defendants, was the recipient of Plaintiffs' money; the party responsible for managing same; and the party permitted to charge fees for said management.  (*Id.* ¶¶ 44-45). Although the 4th Am. C. concludes that <u>all defendants</u> "controlled" Atlas," a third-party organization in <u>Geneva, Switzerland</u>, owned and operated by "the Dwek family" (another non-party), (4th Am. C. ¶ 33), this allegation is unsupported and unsupportable.[6] That is precisely the reason that Plaintiffs'

---

[6] This entire section of the 4th Am. C. (¶¶ 26-29) was <u>copied and pasted</u> from the Amended Complaint in the NY State Action. Plaintiffs' counsel failed to perform any independent investigation, instead copying material under the guise that if it is alleged in another action, it must be true. This lawsuit and the 4th Am. C. are replete with examples of this behavior, including the recent addition of irrelevant citations to unrelated litigations involving "some of the Suttons"

counsel again leans on the hope that the Court will infer guilt by familial association when he asserts that "the Dwek family" is related to the defendants. (4th Am. C. ¶ 26).

From here, the 4th Am. C. continues its rote repetition of prior Complaints by asserting that in July and August, 2006, Plaintiffs (<u>not defendants</u>) deposited unspecified assets and securities such as stocks and bonds worth $1,328,523 into three separate accounts at <u>Atlas</u>.  (4th Am. C. ¶ 47). Plaintiffs further allege that on or about August 10, 2006, they deposited an additional $180,000 into one of the three <u>Atlas</u> accounts (*id.* ¶ 48) and on or about November 1, 2006, they deposited an additional $187,285 into the same <u>Atlas</u> account. (*Id.* ¶ 49).  Contrary to these allegations, Plaintiffs claim that defendants, <u>not Atlas</u>, received a total amount of $1,695,908 of assets owned by Plaintiffs to manage. (*Id.* ¶ 50).

The 4th Am. C. inauspiciously attempts to cure statute of limitations issues that afflicted prior Complaints by alleging that Plaintiffs, either personally or through their sons or other "agents," requested liquidation of their investments and repayment of their funds "continually" from January 2013 through February 2018. (*Id.* ¶ 53). One such request allegedly occurred at an October 2014 meeting between Plaintiffs' sons, Morris and Jonathan Dayan, and Albert and Elliot at Middlegate Securities Ltd.'s offices (*id.* at 55), while another request allegedly occurred in April 2017 between Joey Levy, Merlene's brother, and Albert. (*Id.* ¶ 56). The 4th Am. C. then asks defendants to prove a negative by asserting that they "never disputed" or "did not dispute" that "defendants owed plaintiffs money pursuant to the agreement…" at broadly alleged "meetings" (4th Am. C. ¶¶ 55-56). Notably, Plaintiffs' counsel fails to provide any context for these alleged meetings nor does the 4th. C. allege any statement or action taken that affirmatively links

---

(notably, <u>not Moving Defendants</u>) (4th Am. C. ¶¶ 12, 13, 71) as though this type of allegation supports a finding of liability or serves as support for allegations. It does not.

Moving Defendants to the alleged oral contract as opposed to simply "not disputing" same.

Nevertheless, allegedly in response to these "demands," certain unidentified defendants made four payments to Plaintiffs in the form of 4 checks: (1) $100,000 on August 29, 2016; (2) $50,000 on March 29, 2017; (3) $50,000 on August 2, 2017; and (4) $120,000 on September 22, 2017. (*Id.* ¶ 57).  Each check was allegedly drawn on a bank account in the name of "Lenora Sutton" a/k/a Defendant Leonora Sutton, (*id.*), an individual who is not a party to the alleged contract. Moving Defendants are not alleged to have made any payments in connection with Plaintiffs' alleged demands.

Unidentified defendants supposedly refused to return any more money to Plaintiffs and refused to inform Plaintiffs what happened to the remainder of Plaintiffs' funds managed by defendants, despite informing Plaintiffs that no additional funds remained, and despite Plaintiffs' money being at **Atlas**. (*Id.* ¶ 62-65).[7]

Accordingly, after allegedly hiring "investigators," Plaintiffs obtained <u>Atlas</u> account statements which revealed that one account was closed in 2013, another was closed in 2014 and prior to closing, numerous transfers were made from the <u>Atlas</u> accounts to unknown recipients. Further, defendants (not Atlas) allegedly retained 75 shares in Thema International Fund.  (*Id.* ¶¶ 68 - 70). The statements also revealed the following charges by <u>Atlas</u>: (i) margin interest of $2,757.97 from 2008 to 2010; (ii) $116,355.47 in management, custodian and administration fees from 2006 to 2012; and (iii) $42,000 in trading commissions from 2006 to 2014.  (*Id.* ¶ 75). Again, however, the 4th Am. C. fails to allege that the Moving Defendants had any connection with the

---

[7] At this point, Plaintiffs' intimate that <u>all defendants</u> breached the "agreement" because they failed to provide reports. A notable omission, however, is any allegation of a term in the "agreement" requiring <u>all defendants</u> to provide reports. Similarly, there is no allegation that Plaintiffs ever requested any reports.

Atlas accounts, participated in the closing of these accounts or the alleged looting of these funds, or benefited in any way from the implied alleged theft.

## LEGAL ARGUMENT

A party may move for dismissal of a complaint on the grounds that the complaint fails to state a cause of action upon which relief can be granted. *See* F.R.C.P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft*, 556 U.S. 678 (*internal quotation marks omitted).*

"Federal courts sitting in diversity apply state substantive law." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 179 (S.D.N.Y. 2011). When considering whether claims asserted are within the statute of limitations, "a federal court sitting in diversity applies the statute of limitations supplied by the forum state." *Glynwill Invs., N.V. v. Prudential Sec., Inc.*, 1995 WL 362500, at *3 (S.D.N.Y. June 16, 1995).

## I.    THE FOURTH AMENDED COMPLAINT FAILS TO MEET THE PLEADING STANDARDS OF RULE 8 AND MUST BE DISMISSED

"Although [Rule] 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (citations and quotations omitted) (affirming dismissal where, after several attempts at amending the complaint, the pleading still "lump[ed] all the defendants

together in each claim and provid[ed] no factual basis to distinguish their conduct" and thus "failed to satisfy [Rule 8's] minimum standard.").

The 4th Am. C. fails to meet even the most liberal of pleading standards. Affording every favorable inference, it still fails to provide Moving Defendants any notice of the claims asserted against them. Indeed, the 4th Am. C. fails to allege that Moving Defendants had any involvement with the alleged "oral contract," nor are they alleged to have taken any specific action with respect to the Plaintiffs' funds. Instead, Plaintiffs rely upon improper group pleading and conclusory allegations without any specific allegations of wrongdoing by Moving Defendants.

For example, the sole basis for liability against Moving Defendants is the conclusory assertion that Moving Defendants, combined with the other defendants, were acting as an "informal association" or "de facto general partnership." (4th Am. C. ¶¶ 23, 32).[8] The alleged "de facto general partnership" is not a named defendant, nor does it appear in the 4th Am. C. again. Instead, the 4th Am. C. impermissibly lumps all defendants together as "the Suttons" (another attempt at imputing guilt by familial association) and attempts to assert collective liability while failing to allege any specific act or failure on behalf of Moving Defendants that warrants a finding of liability against them individually.

_____

[8] While it is not clear what an "informal association" or "de facto general partnership" are, there are no allegations to support that a general partnership existed. A general partnership is a legally significant entity that only exists in certain circumstances. *See* Partnership Law § 10(1) ("A partnership is an association of two or more persons to carry on as co-owners a business for profit.). Where there is no written agreement, a court determines whether a general partnership existed by conduct, intention, and relationship between the parties. The factors to consider include: "(1) sharing of profits, (2) sharing of losses, (3) ownership of partnership assets, (4) joint management and control, (5) joint liability to creditors, (6) intention of the parties, (7) compensation, (8) contribution of capital, and (9) loans to the organization." *Czernicki v. Lawniczak*, 74 A.D.3d 1121, 1124 (2d Dept 2010). Here, there are no allegations supporting a finding of a general partnership between any of the defendants.

Instead, the 4th Am. C. resorts to double speak, twisted words, and implied guilt by association. For example, the assertion that Moving Defendants were "present at various times during" the alleged 2006 meeting, (4th Am. C. ¶ 36) is insufficient to impute that they were involved with the alleged oral contract. The 4th Am. C. is devoid of any statements or actions made by Moving Defendants at said meeting reflecting that they were parties to any agreement or obligated to perform any services. Similarly, the allegations that defendants "never disputed" or "did not dispute" that "defendants owed plaintiffs money pursuant to the agreement…" at broadly alleged "meetings" (4th Am. C. ¶¶ 55-56) is nonsensical because it requires proving a negative – a logical impossibility. That is why the 4th Am. C. intentionally fails to provide context or details of any meetings – because doing such would undermine these misleading allegations.

Finally, the 4th Am. C.'s reference to other lawsuits is unavailing. By broadly referring to "lawsuits alleging the improper management of investor asserts overseas by some of the Suttons" (4th Am. C. ¶ 13) (without any specific allegations regarding Moving Defendants), Plaintiffs are desperately attempting to impute wrongdoing against Moving Defendants based on unproven allegations made in unrelated lawsuits in other courts.

Accordingly, the 4th Am. C. should be dismissed with prejudice.

## II.   THE FOURTH AMENDED COMPLAINT FAILS TO ALLEGE SUFFICIENT DETAIL TO SUPPORT ANY CAUSE OF ACTION

To begin with, despite the Court's clear instructions, nothing has changed in the 4th Am. C to survive dismissal. The 4th Am. C. is simply a regurgitation of allegations made in prior iterations of the Complaint with additional irrelevant allegations sprinkled throughout.

### a.   The 4th Am. C. Fails to Allege the Existence of a Valid Contract

"Under New York law, the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages."

*Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008). "Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Id.* (dismissing breach of contract claim for failing to allege creation of contract where pleadings "[did] not set forth a single fact relating to the formation of the contract, the date it took place, the contract's major terms, the parties to the contract, [] assent to its terms… [or whether] the contract at issue was oral and that the parties intended to be bound by an oral agreement.") (alterations to original).

Rather, "New York law and the *Twombly–Iqbal* standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015). "In order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based." *Howell v. Am. Airlines, Inc.*, 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006) (internal quotation marks omitted). "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim," (*id.* (citations omitted), "however, the complaint must at least set forth the terms of the agreement upon which liability is predicated by express reference." *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012). No breach of contract claim can exist where there are no terms available to assess a party's performance because it would be impossible to tell whether such performance or lack thereof breached the nonexistent terms. *Id.* (dismissing breach of contract claim where plaintiff did not identify contract at issue and did not specify terms of the agreement that defendant purportedly breached beyond vague assertions that contract "set forth [] commissions and other elements of compensation to be paid to Plaintiff").

Instead of complying with the Court's directives, the 4th Am. C. merely recites the exact same allegations (albeit, split into 11 paragraphs as opposed to one long paragraph) that the Court

found wanting when it dismissed the TAC and FAC. (*Compare* 4th Am. C. ¶¶30-41; TAC ¶ 26; FAC ¶ 26). Specifically, in 2006, Raymond, acting on behalf of himself and his wife, allegedly met with Mayer Sutton at non-party Middlegate Securities, Ltd.'s offices. At this meeting Plaintiffs and all defendants (through Mayer) somehow entered into an "oral contract" in which all defendants agreed to act as Plaintiffs' investment managers, responsible for un unknown amount of Plaintiffs' assets including "stocks, bonds, and cash." Plaintiffs proceeded to deposit funds into Atlas and made various demands between 2006 and 2012 for the liquidation of certain funds. (4th Am. C. ¶¶ 30-41; 53).

Nevertheless, it still remains unclear

> who said what to whom, and where and when, to constitute an offer and acceptance; what the rights and obligations were of each party; how much was to be invested and the investment and management responsibilities of Mayer Sutton and his company, Middlegate Securities, to manage Plaintiffs investment in Atlas Securities; and whether the real party-in-interest is Middlegate or Atlas, and not Mayer Sutton.

(Order, p. 1-2).

Plaintiffs' counsel inauspiciously repeats the phrases "Mayer orally agreed" and "Raymond orally accepted" as though alleging that either party "orally" agreed to the exact same allegations previously raised somehow cures the pleading deficiencies of prior Complaints. (*Compare* 4th Am. C. ¶¶30-41; TAC ¶ 26; FAC ¶ 26).[9] It does not. Indeed, the "terms" that Mayer and Raymond "orally" agreed upon are the exact same terms that were already found to be too vague and indeterminate to constitute a contract. (*Compare* Order, p. 1-2 with 4th Am. C. ¶¶ 30-41).

---

[9] Without knowing the terms of the agreement, it is impossible for defendants to assess whether such a contract would be subject to the Statute of Frauds.

Moreover, whatever Mayer and Raymond may have discussed in 2006, the 4th Am. C. fails to allege that the Moving Defendants agreed or acquiesced to any of these terms let alone an alleged oral "contract." Their mere presence at a meeting in 2006 (4th Am. C. ¶ 36) or failure to "dispute" such agreement (4th Am. C. ¶¶ 55-56) is insufficient to impute liability for breach of "contract" where no affirmative statements or actions are alleged binding Moving Defendants to same. (*Kreiss v. McCown DeLeeuw & Co.*, 37 F. Supp. 2d 294, 299 (S.D.N.Y. 1999) ("It is a basic principle of contract law that absent the parties' intent to be bound, no contract can be formed.") Such language is pure sophistry and must be disregarded.

Finally, the 4th Am. C.'s attempt to tie the Moving Defendants to Plaintiffs' funds by repeatedly alleging that all defendants somehow filed "paperwork" with Atlas in 2006 and that this "paperwork" confirms the terms of the alleged "contract" (4th Am. C. ¶¶ 44-46), is unavailing. This "paperwork" fails to confirm any alleged contract between all defendants and Plaintiffs (nor does reference to them confirm a contract). Instead, this "paperwork" confirms that if a contract even existed, it was with Atlas. (*See* 4th Am. C. ¶¶ 44-46 (alleging that the "Suttons through Atlas" would charge maintenance fees and have discretion over Plaintiffs' funds). Although the 4th Am. C. asserts, in conclusory and unsupported fashion, that all defendants somehow controlled Atlas (*see* 4th Am. C. ¶ 43), there is nothing to support this allegation because it is unsupportable and must be disregarded.

Accordingly, even if there were sufficient terms to assess performance, there are no allegations that Moving Defendants committed any act or failed to act to warrant a breach of the alleged contract. Because Plaintiffs fail to overcome the most basic hurdle to sustain a claim for a breach of contract, it must be dismissed.

b.  The 4th Am. C. Fails to Allege a Fiduciary Relationship

"To state a claim for breach of fiduciary duty in New York, a plaintiff must demonstrate the existence of a fiduciary duty between the parties and a breach of that duty by the defendant." *Ciccone v. Hersh*, 530 F. Supp. 2d 574, 577 (S.D.N.Y. 2008), *aff'd*, 320 F. App'x 48 (2d Cir. 2009).

Here, the 4th Am. C. fails to allege a fiduciary relationship with Moving Defendants. Instead, it confirms that Plaintiffs did not have a contract with defendants but rather with Atlas in which Atlas, was entrusted with sole discretion and custody of Plaintiffs' funds:

> **ATLAS** may carry out, in its name but for the account and at the exclusive risk of the customer, all acts that it deems appropriate or useful to the management of the client's assets.

(4th Am. C. ¶ 88) (emphasis added).

Despite this allegation, the 4th Am. C. asserts, in contradictory fashion, that the "Suttons owed fiduciary duties of good faith and loyalty to Plaintiffs." (4th Am. C. 90). Plaintiffs' allegations do not even support such an absurdity. According to the 4th Am. C., Plaintiffs' money was deposited in Atlas, (*Id*. ¶ 48-50) Atlas was entrusted with the management of their funds. (*Id*. ¶ 88) and Atlas was permitted to charge fees for the administration of Plaintiffs' accounts. (*Id*. ¶ 44). However, Atlas is not even a party to this lawsuit.

Simply put, Plaintiffs' counsel attempts to implicate Moving Defendants in the alleged fraudulent scheme by relying upon improper group pleading and conclusory allegations that Moving Defendants had "control" of Atlas must fail.

c.  The 4th Am. C. Fails to Demonstrate that Defendants Benefited from the Transferred Funds

In pleading a claim for unjust enrichment, "a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution."

*Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). An "allegation that the [defendants] received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment." *Old Republic Nat. Title Ins. Co. v. Cardinal Abstract Corp.*, 14 A.D.3d 678, 680 (2d Dep't 2005) (alterations to original); *Marcal Fin. SA v. Middlegate Sec. Ltd.*, 2022 WL 677344 (N.Y. App. Div. Mar. 8, 2022) (dismissing unjust enrichment claim "because plaintiffs failed to allege that Middlegate was ever in receipt of [plaintiffs'] funds or any related fees").

Again, Plaintiffs broadly allege that they transferred funds to <u>Atlas</u> (despite the later, contradictory assertion that they were "induced by the Suttons to entrust Plaintiffs' assets to them." 4th Am. C. ¶ 97). Later, these funds were transferred by <u>Atlas</u>, (<u>not</u> Moving Defendants), to unknown accounts with unknown recipients (4th Am. C. ¶¶ 68-69), thus, the 4th Am. C. fails to connect any of the allegedly unauthorized transfers to Moving Defendants. The 4th Am. C. again asserts that all defendants "lost plaintiffs' assets and thus improperly charged management, administrative, and custodial fees, commissions and other fees totaling approximately $161,000," (4th Am. C. ¶ 101), however fails to explain the involvement by any of <u>defendants</u> when Plaintiffs' money was deposited in <u>Atlas</u>, for <u>Atlas'</u> management and for which <u>Atlas</u> charged fees. The 4th Am. C. fails to allege any actual benefit to Moving Defendants and must be dismissed.

   d.   <u>The 4th Am. C. Fails to Allege that Defendants were in Control or Possession of Plaintiffs' Money</u>

Under New York law, "the elements [for an equitable accounting] include a fiduciary or confidential relationship, money entrusted to the defendant imposing the burden of an accounting, the absence of a legal remedy, and in some cases a demand and refusal." *Metro. Bank & Tr. Co. v. Lopez*, 189 A.D.3d 443 (1st Dep't 2020) (alterations to original); *see also Dayan Enterprises, Corp. v. Nautica Apparel, Inc.*, 2003 WL 22832706, at *1 (S.D.N.Y. Nov. 26, 2003).

To the extent Plaintiffs' claims do not arise from a contractual relationship, the allegations

here do not support a cause of action for accounting where, as described more fully above, the allegedly missing funds were in the custody and control of <u>Atlas</u>, and transferred by <u>Atlas</u> to unknown recipients at the direction of unknown parties.

### III. THE BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, UNJUST ENRICHMENT, AND ACCOUNTING SHOULD BE DISMISSED AS OUTSIDE THE APPLICABLE STATUTES OF LIMITATIONS

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 131–32 (2d Cir. 2021). Here, even under the most generous interpretation of the 4th Am. C., each of Plaintiffs' claims arose either (1) during the period of 2009 to 2013 when Defendants allegedly mismanaged Plaintiffs' money (4th Am. C. ¶ 68) or (2) beginning in 2013 when Plaintiffs allegedly demanded the return of the funds. (*Id*. ¶ 53). Because the longest applicable statute of limitations for any of Plaintiffs' claims is six years, all of Plaintiffs' claims expired by 2019. As this action was commenced in November 2020, the causes of action asserted in the 4th Am. C. are well beyond the applicable period and, accordingly, must be dismissed.

a. <u>The Breach of Contract Claim Should be Dismissed as Outside the Statute of Limitations</u>

The breach of contract claim should be dismissed as outside the applicable six-year statute of limitations. *See* CPLR 213(2). The statute of limitations on a breach of contract claim "accrues at the time of the breach… [even if] no damage occurs until later." *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) (*citing* CPLR 213) (alterations to original); *see also Marcal Fin. SA v. Middlegate Securities Ltd.,* 203 A.D.3d 467 (N.Y. App. Div. 2022) (noting that statute of limitations began accruing "when plaintiffs' money was transferred in violation of their agreement"). The injured party need not have been aware of the breach for the statute of limitations to begin running. *Ely-Cruikshank Co.*, 81 NY2d at 402. Where multiple breaches are alleged, "a

separate cause of action arises out of each transaction." *Glynwill Invs., N.V. v. Prudential Sec., Inc.*, No. 92 CIV. 9267 (CSH), 1995 WL 362500, at *3 (S.D.N.Y. June 16, 1995) (affirming that the moving defendant's analysis of the statute of limitations in circumstances with multiple transactions).

According to Plaintiffs, a breach occurred between 2006 and 2013 when their funds were not invested conservatively (4th Am. C. ¶ 68) and not immediately returned upon request in 2013. (*Id.* ¶ 53). Regardless, the statute of limitations for this claim expired in 2019, at least 1 year before this lawsuit was filed. *See* CPLR 213(2). Accordingly, the breach of contract claim cannot stand.

b.  <u>The Breach of Fiduciary Duty Claim Should be Dismissed as Outside the Statute of Limitations</u>

Where a "breach of fiduciary duty claim seeks only monetary relief, [then] it is governed by a three-year statute of limitations." *Glynwill Invs., N.V. v. Prudential Sec., Inc.*, No. 92 CIV. 9267 (CSH), 1995 WL 362500, at *3 (S.D.N.Y. June 16, 1995) (alterations to original) (citing CPLR §214(4)).  "[A] cause of action for a breach of fiduciary duty under New York law accrues upon the occurrence of the alleged wrongful act." *Salzmann v. Prudential Sec. Inc.*, No. 91 CIV. 4253 (KTD), 1994 WL 191855, at *7 (S.D.N.Y. May 16, 1994); *Marcal Fin. SA*, 2022 WL 677344 (Like the breach of contract claim, the fiduciary duty "claim also accrued when the unauthorized transfers were made"). In the case of allegedly multiple breaches, the statute of limitations begins "accru[ing] at the time each wrongful transaction occurred." *See Glynwill Invs.*, 1995 WL 362500, at *3 (alterations to original).

Because Plaintiffs seek only monetary damages in the 4th Am. C., the statute of limitations is 3 years from the date of accrual of a claim for breach of fiduciary duty.[10]  As outlined above, all of the transactions which form the basis of Plaintiffs' claims occurred outside the applicable statute of limitations period (i.e., prior to 2017). As such, the Plaintiffs' claim for breach of fiduciary duty should be dismissed.

c.  The Unjust Enrichment Claim Should be Dismissed as Outside the Applicable Statute of Limitations

The statute of limitations for unjust enrichment depends upon the remedy that plaintiff seeks. Where a plaintiff seeks a monetary remedy, the statute of limitations is three years. *Pirri v. Cheek*, 2019 WL 2472438, at \*5 (S.D.N.Y. June 13, 2019); *Cohen v. Dunne*, 2017 WL 4516820, at \*3 (S.D.N.Y. Sept. 27, 2017). Where the remedy is equitable, the statute of limitations is six-years. *Pirri*, 2019 WL 2472438, at \*5; *Cohen*, 2017 WL 4516820, at \*3; *see also Baiul v. NBC Sports*, No. 15-CV-9920 (KBF), 2016 WL 1587250, at \*10 (S.D.N.Y. Apr. 19, 2016), *aff'd sub nom. Baiul v. NBC Sports*, 708 F. App'x 710 (2d Cir. 2017). A cause of action for unjust enrichment accrues upon the occurrence of the wrongful act giving rise to a duty of restitution. *See Onanuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 500 (S.D.N.Y. 2005).

As discussed, the statute of limitations with respect to Plaintiffs' allegations stemming from the alleged transfers that occurred between 2009 and 2013 has expired, regardless of which limitations period is applied.  Accordingly, Plaintiffs' claim for unjust enrichment must be dismissed.

---

[10] To the extent Plaintiffs assert that this claim is based in fraud and thus subject to a six-year statute of limitations, the claims are still outside the statute of limitations. (Nevertheless, Moving Defendants do not concede the applicability of this exception because to the extent fraud is alleged it is merely incidental and thus not sufficient to constitute a basis for the breach of fiduciary duty claim. *See Balta v. Ayco Co., LP*, 626 F. Supp. 2d 347, 357 (W.D.N.Y. 2009)).

d.  The Accounting Claim Should be Dismissed as Outside the Applicable Statute of Limitations

A claim for accounting is governed by a six-year statute of limitations. *See* CPLR 213; *see also Evangelista v. Mattone*, 44 A.D.3d 704, 705 (2d Dept 2007). Because the accounting claim expired in January 2019, six years after Plaintiffs allegedly began "continually" demanding the return of their funds, it must be dismissed. Even assuming the statute of limitations accrued in October 2014 following the alleged meeting between Moving Defendants and Plaintiffs' sons, it still expired before this action was initiated on November 13, 2020. Accordingly, this claim must be dismissed.

## IV.   EACH TORT CLAIM IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM AND THUS MUST BE DISMISSED

Plaintiffs' allegations of wrongdoing stem from an alleged oral contract. Despite this, Plaintiffs also assert a variety of tort claims all of which are barred as duplicative of their contract claim. In further disregard of this Court's instructions (Post-Conference Order, p. 2), none of these claims are pleaded in the alternative.

a.  The Breach of Fiduciary Duty Claim Should be Dismissed as Duplicative of the Breach of Contract Claim

A "cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *E-Glob. Alls., LLC v. Anderson*, No. 10 CIV. 2844 KMK PED, 2011 WL 8879268, at *9 (S.D.N.Y. May 11, 2011), *report and recommendation adopted*, No. 10-CV-2844 KMK PED, 2012 WL 3656042 (S.D.N.Y. Aug. 25, 2012).  In alleging a breach of fiduciary duty, "a plaintiff must set forth allegations that, apart from the terms of the contract, the parties created a relationship of higher trust than would arise from their contracts alone so as to permit a cause of action for breach of a fiduciary duty independent of the contractual duties." *Ellington*

*Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011) (internal quotations and citations omitted).

Although Plaintiffs' breach of fiduciary duty claim is styled as a separate legal violation, it is identical in substance to their breach of contract claim. Indeed, in support of such claim Plaintiffs directly cite to a contract (4th Am. C. ¶ 88) and their claim rests upon the alleged fiduciary relationship created by this contract. Accordingly, Plaintiffs' claim for breach of fiduciary duty must be dismissed as duplicative of their claim for breach of contract.

b. The Cause of Action for Unjust Enrichment Should be Dismissed Because the Alleged Relationship Between Plaintiffs and Defendants is Governed by a Contract

As with a claim for breach of fiduciary duty, "an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 512 (S.D.N.Y. 2018) (citing *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012)). Instead, "[i]t is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello*, 18 N.Y.3d at 790 (alterations to original).

Here, again, taking the allegations as true, Plaintiffs claim that they transferred their funds (to Atlas) pursuant to a contract (4th Am. C. ¶¶ 30-41) and that their money was transferred or withdrawn from said Atlas accounts but Plaintiffs do not know to whom the money was transferred, so they assume it was all defendants. (4th Am. C. ¶¶ 68-70). In support, Plaintiffs' counsel again relies upon reference to unproven allegations in unrelated lawsuits.

Accordingly, Plaintiffs' claim for unjust enrichment must be dismissed as duplicative of their contract claim.

c. The Cause of Action for Accounting Should be Dismissed Because the Alleged Relationship Between Plaintiffs and Defendants is Governed by a Contract

"New York courts have repeatedly dismissed accounting claims where the parties' relationship arises from a contract." *Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 339 (E.D.N.Y. 2016). The Courts have found that "an equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter." *See e.g. Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011). This is because "a plaintiff would be able to obtain the information and damages through discovery of his or her breach of contract claim, and thus, he or she has an adequate remedy at law." *Associated Mortg. Bankers, Inc.*, 159 F. Supp. 3d at 340. Here, again, Plaintiffs' accounting claim arises from an alleged contractual relationship that Plaintiffs had with defendants (or more specifically, Atlas). Accordingly, Plaintiffs' accounting claim cannot stand and must be dismissed.

## V. PLAINTIFFS' COUNSEL HAS USED THE JUDICIAL SYSTEM TO EFFECTUATE HARASSMENT AND ABUSE AND HE MUST BE SANCTIONED AS A RESULT

In the Order, this Court specifically instructed Plaintiffs' counsel that he must comply with FRCP 11 if he chose to amend the TAC.

FRCP 11(b) states that

> by presenting to the court a pleading … an attorney … certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…

Fed. R. Civ. P. 11(b).

Plaintiffs' counsel has failed to comply with FRCP 11. Indeed, "an argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear … that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (affirming sanctions against plaintiff's counsel where counsel filed a limited supplemental complaint in direct "willful contravention of the court's [] orders."); *see also Zaldivar v. City of Los Angeles,* 780 F.2d 823, 832 (9th Cir. 1986) ("Without question, <u>successive complaints based upon propositions of law previously rejected may constitute harassment under Rule 11</u>") cited approvingly in *Malley v. Corp. Couns. of City of New York*, 9 F. App'x 58, 60 (2d Cir. 2001) (affirming award of sanctions by this Court where "conduct in filing the instant case was vexatious and harassing.") A court may order sanctions against a party who files pleadings in contravention of a court order. *Malley v. Corp. Couns. of City of New York*, 9 F. App'x 58, 60 (2d Cir. 2001) (Affirming sanctions by this Court where party continued filing of complaints "involving the same core allegations" in contravention of Court orders.)

Here, in contravention of this Court's directives, Plaintiffs' counsel regurgitated the exact same allegations in the 4th Am. C. that the Court already found wanting without providing any allegations sufficient to answer the Court's specifically propounded questions.[11] Instead, counsel

---

[11] This alone is sanctionable conduct. *Malley v. Corp. Couns. of City of New York*, 9 F. App'x 58, 60 (2d Cir. 2001) (Affirming sanctions by this Court where party continued filing of complaints "involving the same core allegations" in contravention of Court orders.)

sprinkled additional irrelevant information throughout the Complaint and referenced documents that demonstrate that <u>Moving Defendants are not, and have never been, the proper parties to this lawsuit</u>. Indeed, these allegations confirm that Plaintiffs' funds were with <u>Atlas,</u> the real party in interest.

Despite having the Atlas account documents prior to commencing this litigation in November 2020, Plaintiffs' counsel intentionally omitted references to these documents in prior iterations of the Complaint. Counsel <u>knew</u> that Moving Defendants were not liable for the alleged wrongdoings, yet he continued, <u>in bad faith</u>, to pursue baseless and harassing claims against them for over two (2) years. Moving Defendants have incurred legal fees of approximately $97,734.60 (not including the time spent on this motion) to defend against these ridiculous allegations while Plaintiffs' counsel flaunted his ethical obligations and abused the judicial system in hopes of a quick payday.

Plaintiffs' counsel inauspiciously clings to conclusory allegations to impute liability against Moving Defendants by familial associations (i.e. Moving Defendants were part of a "de facto general partnership" or "informal association" with their father and brothers and Moving Defendants "controlled" Atlas because they are related to the principals of same) without any factual allegations connecting them to the oral contract or allegedly fraudulent scheme. To make matters worse, these allegations are <u>copied, word for word, from the NY State Action</u>[12] and demonstrate that Plaintiffs' counsel never attempted an independent investigation because this would have revealed that there is absolutely no evidentiary support for these claims.

---

[12] As are much of Plaintiffs' counsel's allegations.

Plaintiffs' counsel's actions have been anything but compliant with FRCP 11, costing Moving Defendants approximately $97,734.60 in legal fees to defend themselves against wholly baseless and unsupported claims. Sanctions are required.

## **CONCLUSION**

For the foregoing reasons, the Moving Defendants' motion to dismiss should be granted in all respects.

Dated: New York, New York
      July 29, 2022

                                                **WACHTEL MISSRY LLP**

                                                By: */s/ Evan S. Weintraub*
                                                     Evan Weintraub
                                                     Ryan Roberts
                                            One Dag Hammarskjold Plaza
                                            885 Second Avenue
                                            New York, New York 10017
                                            (212) 909-9500
                                            *Attorneys for Defendants Albert Sutton and*
                                            *Elias Sutton a/k/a Elliot Sutton.*